SCOTT (CLARK v.). See Case No. 2,833.

---

## Case No. 12,527.

SCOTT et al. v. CLINTON & S. R. CO.

[6 Biss. 529; [1] 8 Chi. Leg. News, 210.]

Circuit Court, S. D. Illinois. March, 1876.

REMOVAL OF CAUSES—PROPER TERM—CERTIORARI —PERSONAL PROPERTY—ROLLING STOCK OF RAILROAD.

1. The existence of a suit by stockholders of a railroad company, and even possession by trustees under the order of the state court therein, do not affect the right to remove into the federal court a suit brought by bondholders under a deed of trust, which is paramount to the rights of the stockholders; and the possession must follow into the federal court.

2. The provision in the Illinois constitution of 1870, that the rolling stock of a railroad company shall be deemed personal property, does not change the rule that a mortgage made by the company, covering all after-acquired property, includes such acquired rolling stock, if obtained before the rights of execution creditors attach.

[Cited in Hamlin v. Jerrard, 72 Me. 75; Williamson v. New Jersey Southern R. Co., 29 N. J. Eq. 326.]

3. The term at which a cause could be first tried, within the meaning of section 3, of the act of March 3, 1875 [18 Stat. 471], is the term at which the issues are first made up, the party applying for removal not having been guilty of negligence.

[Cited in Michigan Central R. Co. v. Andes Ins. Co., Case No. 9,526; Chester v. Wellford, Id. 2,662; Whitehouse v. Continental

Fire Ins. Co., 2 Fed. 499; Public Grain & Stock Exchange v. W. U. Tel. Co., 16 Fed. 291; National Bank of Clinton, Iowa, v. Dorset Pipe & Paving Co., 20 Fed. 708; Wilkinson v. Delaware, L. & W. R. Co., 22 Fed. 355.]

[Cited in Eldred v. Becker, 60 Wis. 45, 18 N. W. 643; First Nat. Bank of Wausau v. Conway, 67 Wis. 218, 30 N. W. 218; New York Warehouse & S. Co. v. Loomis, 122 Mass. 432; Phœnix Life Ins. Co. v. Saettel, 33 Ohio St. 282.]

4. A certiorari is not necessary where the record of the state court is already before the federal court.

[Cited in Stone v. Sargent, 129 Mass. 507.]

[5. Cited in Sharpe v. Gutcher, 74 Ind. 364, to the point that, after application for removal is properly made, the jurisdiction of the state court is transferred to the federal courts, and the state court can do nothing more with the same except to perfect the removal. Any other acts of the state court thereafter are coram non judice and void.]

[This was a suit by Thomas A. Scott and others, trustees, against the Clinton & Springfield Railroad Company.]

This cause, originally instituted in the circuit court of McLean county, Illinois, was removed to the circuit court of the United States for the Southern district of Illinois, in December, 1875, under the act of congress of March 3, 1875, and a motion having been made by Henry Crawford on behalf of the respondents to strike the record from the files, and TREAT, District Judge, having intimated a desire to have the opinion of DRUMMOND, Circuit Judge, upon the question, the motion was argued before Judge DRUMMOND, February 14, 1876, by Mr. Crawford for the motion, and R. Biddle Roberts, of Chicago, for the plaintiffs, contra.

DRUMMOND, Circuit Judge, having intimated an opinion, and TREAT, District Judge, concurring, an order was entered at Springfield on the 15th of February, taking jurisdiction of the case, and requiring the defendants to answer.

Subsequently an application was made to the court, praying them to rescind the order taking jurisdiction of the case, and the court allowed the same to be heard, and on March 8, 1876, it was re-argued.

Lawrence Weldon, for motion to remand.

R. Biddle Roberts and Robert E. Williams, contra.

DRUMMOND, Circuit Judge. This was a suit originally brought in the circuit court of McLean county, and which has been removed from that court to this court under the act of congress of March 3, 1875. At the time the application was made to the state court for the removal of the cause, there was also pending in the circuit court of McLean county a bill filed by one Kelly for himself and others as stockholders of the railroad company, against the company and the directors, in which the latter were charged with certain wrongful acts,

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

to the injury of the stockholders, among which was one that the directors were interested in a company known as the Morgan Improvement Company, which had contracted to construct the railroad, upon which contract the directors had realized large profits, and it was claimed that these profits should inure to the benefit of the company. That case had gone to a decree, which was affirmed by the supreme court of the state, and all the questions in the case appear to have been settled except the taking of an account.

The plaintiffs in this suit are trustees and bondholders under a certain deed of trust given by the railroad company to secure bonds which had been issued for the construction of the railroad, and which it is not controverted were paramount to any claims which might exist on the part of the plaintiffs in the Kelly case, upon the property of the road, or upon profits that might be realized upon any contract made by the directors, and which might inure to the company.

The state court had appointed a receiver in the Kelly case, who, in August last, had been superseded by the appointment of two of the plaintiffs in this case, Scott and Jewett, as trustees, under the deed of trust, the receiver being required to deliver to them all the property held by him as receiver. The trustees were restrained from selling the property until the further order of the court, but were to receive and hold it, and operate the road, under the powers vested in them by the deed of trust, and they were to retain, use and operate the road until the further order of the court, or until discharged from their trust according to law.

At the same time an order precisely similar was made by the state court in this case, so that Scott and Jewett had possession of the road, and were operating it as trustees under the deed of trust (which authorized them in a certain contingency so to do), and in conformity with the order of the state court.

This being the condition of the two cases, and a record of this case being filed in this court, a motion is made, the effect of which is to remand the cause to the state court—First, for the reason that at the time the application was made for a removal, the order made in August in the Kelly case so operated upon the property that it was still in the custody of the state court, in the hands of the trustees, as quasi receivers; and second, because the petition filed by the plaintiffs in this case for the removal of the case was not in apt time. No objection is made to the sufficiency of the petition, or of the bond given in the state court, and there is no controversy but that the plaintiffs in this case and the defendants were citizens of different states, and so that the cause as to citizenship was removable.

As to the first objection. The suit in the Kelly case was a controversy in relation to the property confessedly subordinate to any rights existing on the part of the trustees and bond-holders under the deed of trust, the plaintiffs in this case. The controversy existing in the Kelly case was substantially settled when the application was made for removal in this case. That case did not claim to interfere with the rights of any of the bondholders, or of the trustees representing them. This, then, was a controversy at the time the application was made, wholly between citizens of different states. Did the order made in August by the state court in the Kelly case, turning the property over to the trustees as custodians, to hold and operate the road under the deed of trust, prevent the removal of this cause? It is to be observed that that order was in no respect different from that made in this case by the state court; the property, therefore, was just as much in the possession and control of the trustees in this case as in the Kelly case, and when the case is removed to this court, if by law that can be done, it necessarily brings with it the order made by the state court transferring the property to the trustees in this case, and the order certainly is just as binding and conclusive upon the rights of parties in this case; and the question is, whether the court cannot look into the real controversies existing in the two cases, for the purpose of determining whether or not the order made by the state court in the Kelly case could prevent the removal of this case.

It is manifest that the order in both cases was made because the deed of trust authorized, under certain circumstances, the trustees to take possession of the property. It is not disputed but that the circumstances authorizing such possession under the deed of trust had occurred, and that, independent of the order of the court, the trustees had a right, according to the terms of the deed of trust, to take possession of the property.

The effect, then, of the order made in each case, was to put the trustees in possession under the deed of trust, and because there was a litigation pending, affecting the property in the two cases, to make the trustees subject, to some extent at least, to the control of the court. But it seems to me that when we are considering a question of jurisdiction, and whether or not these parties in an independent suit, seeking different relief, can be prevented from exercising an undoubted right under the act of congress, we can look to the real status of the two cases to determine whether this is an insuperable obstacle to the removal of the cause.

A receiver had been appointed in the Kelly case. That receiver had been removed because, it is to be presumed, the court deemed the trustees, under the circumstances, the proper custodians of the property. In fact, it seems to be conceded that the Kelly case was not one where a receiver should have been appointed. It may be regarded, therefore, only a possession of the trustees, so far as the court was concerned, for the purpose of exercising a certain control over the property, so as to protect the rights of all parties. Now what rights have any of the parties in the

Kelly case, as compared with the plaintiffs in this case?

In this case their rights are paramount. This is a distinct and separate controversy, with which the Kelly case has nothing to do. All serious questions in that litigation have been settled by the opinion of the supreme court of the state; they do not interfere with the controversy in this case, and as to the possession of the property, that is substantially under the authority of the deed of trust to which these plaintiffs are parties, and under which it is their duty to take possession and operate the road in the interests of the bond-holders, whom the trustees represent. And certainly, as already mentioned, the effect of the order of the state court, so far as it can have any upon the right of removal, is just as strong, and places just as effectually the property in the possession of the trustees in this case, as it does in the Kelly case.

A priority of equity and of right must give this court a paramount control over the property, where the case is removed, as we think it can be, from the state to the federal court. It follows, therefore, that the control of the state court over the property in the Kelly case, as against the trustees in this case, and the parties and interests they represent, is little more than nominal, and if the trustees are called on by the state court, it would be sufficient to answer that they are subject to the terms of the deed of trust, and to the orders of this court in this case, at least to the extent and priorities of the interests the trustees represent.

It is said, however, that there is, or may be, a large amount of property not covered by the mortgage or deeds of trust, and therefore not subject to the claims of the bondholders represented in the mortgage.

There seems to be considerable misapprehension as to the effect of the provision in the constitution of 1870 in this state, which declares that the rolling stock and other movable property of railroads shall be personal property. I do not understand that this changes the rule of equity which the supreme court of the United States declared in the case of Pennock v. Coe, 23 How. [64 U. S.] 117, to the effect that whenever a mortgage is made by a railroad company to secure bonds, and the mortgage includes all present and after-acquired property, as soon as the property is acquired, the mortgage operates upon it. In other words, it seizes the property or operates on it by way of estoppel as soon as it comes into existence, and is in possession of the mortgagor, and the mortgagees, under such circumstances, have a prior equity to the claims of creditors obtaining judgments and executions after the property is thus acquired and placed in possession of the mortgagor. That was a case of locomotives and rolling stock which had been purchased by the mortgagor long after the mortgage was executed, and of which the mort-

gagor had acquired possession prior to the obtaining of judgments by the parties who sought to make them available for the payment of their debts.

That principle has been adhered to in the case of Dunham v. Cincinnati, P. & C. R. Co., 1 Wall. [68 U. S.] 254, and also in the case of Galveston R. Co. v. Cowdrey, 11 Wall. [78 U. S.] 459, and must be considered as the settled law of the federal courts upon that subject, so that all property that was acquired in this case by the railroad company, the deeds of trust having expressly declared that it was given for all the property then in possession of the railroad, or thereafter to be acquired, was covered by the deed of trust, and the mortgagees have a superior equity as against all parties who, at the time that any after-acquired property came into possession of the railroad company, had not an inchoate or perfect lien upon the same.

The principles declared in the case of Pennock v. Coe [supra] and other cases referred to in the supreme court of the United States, directly apply in this case. I do not understand that it makes any difference whether the property is real or personal. It is true that we have, as a sort of necessity of the case, and yielding, to some extent, to the statute of this state, where supplies and materials have been furnished to a railroad, and the diligence required by the statute has been used by the creditors to enforce their claims within six months, allowed the payment of those claims, which, perhaps, is stretching the principle referred to as decided by the supreme court beyond its legitimate operation.

Then, as to the second objection, that the application was not made in time: The third section of the act of 1875, declares that a party seeking a removal from the state to the federal court, shall make and file a petition in the suit in the state court, before or at the term at which said cause could be first tried, and before the trial thereof.

It is objected, that as more than a term elapsed from the time that this suit was pending in the state court before the application was made, therefore it was too late; and the question arises as to the true construction of this part of the third section of the act of 1875.

When is the term at which the cause could be first tried, and when is it that it can be said to be before the trial thereof? Could this cause have been tried or heard before this application was made? We are required to say, upon the facts as they appear in the record, that this cause could have been tried at a term before the application was made. In a case which was recently decided by me at Chicago, I held that where a cause was pending in the state court, being a bill in chancery, and where an answer had been filed and an issue thereon, and where it appeared that the cause could have been tried, but that by consent of both parties it had been continued over the term, the application

for removal came too late, for the cause was at issue and could have been heard, as it satisfactorily appeared, by the court, and therefore the action of the parties in postponing it was. neither an act of the law or of the court, and consequently the application came too late.

But in this case, there was not only no issue when the application was made, but there was no answer filed by the parties. It does not appear that there had been any such negligence by those who made the application in this case, as to deprive them of the right which was clearly given by the act of 1875. The object of this provision of the law was to prevent parties from making an application after the term when the cause could have been tried.

Now, the cause cannot be heard until there is an issue; and in this case, therefore, it was not competent for the court to try the case, there being no issue before the court to try. And, therefore, I think that within the meaning of the law, a term had not elapsed during which the cause could have been heard. It is to be regretted, perhaps, that the language of the statute upon this subject is not more precise. It will be observed that is more especially applicable literally to the trial of a case at law at "the term at which said cause could be first tried:" and it is often a matter of difficulty to determine what is the first term at which a chancery cause can be tried or heard. Whether the parties seeking a removal could be guilty of such laches as to prevent it, although an issue had not been made up, and the cause might not be ripe for hearing, it is not necessary now to decide. It is sufficient that it does not affirmatively appear in this case, upon inspection of the record, that such laches existed on the part of these plaintiffs. Neither is it necessary to decide whether it is competent for this court to hear evidence on that point outside of the record. It is sufficient for us to decide the case as it exists before us.

We think that this is a controversy between citizens of different states, and that the application was made for removal at or before the term at which the cause could be first heard, and that. therefore, it is properly removed to this court.

The only object of a certiorari, upon which stress is sometimes laid, is to bring the record from the state into the federal court.

The act of 1875 provides for the issue of that writ by the federal court, in cases within the terms of the act, and gives the federal court power to enforce the writ. But here the record itself of the state court is before us, and the issue of a certiorari would therefore be a useless act.

The motion to remand is overruled.