JOHNSON vs. THE BREWERS' FIRE INSURANCE COMPANY OF AMERICA.

*March 8 — March 24, 1881.*

STATE AND FEDERAL COURTS. *Validity of judgment in state court after attempted removal to federal court.*

Where a proper petition and sufficient bond for the purpose are filed by the defendant in a cause commenced in a state court, and a motion thereupon made by him for a removal of the cause to the proper federal court, if the state court erroneously denies such motion and proceeds to judgment in the cause, the judgment is *not void*, but, if not set aside or reversed, must be treated as valid in all collateral actions.

CASSODAY and TAYLOR, JJ., dissent.

APPEAL from the County Court of *Milwaukee* County.

Action upon a Michigan judgment. The following statement of facts was prepared by Mr. Justice CASSODAY as the basis of his dissenting opinion. A briefer outline of the facts will be found in the opinion of Mr. Chief Justice COLE.

Johnson vs. The Brewers' Fire Ins. Co. of America.

On the 29th of June, 1874, Boswell, assignor of the plaintiff, *Johnson*, commenced a suit against the defendant company, in the circuit court for the county of Menominee in the state of Michigan, to recover upwards of $2,000 damages caused by loss from fire, upon a policy of insurance issued by the defendant. Process was served on the Commissioner of Insurance of Michigan; and the proofs of service showed that the defendant was a corporation of Wisconsin, located at Milwaukee, and that Jacob Oberman was president thereof and Joseph Schlitz was its secretary. The declaration was filed July 27, 1874; on the 22d of August, 1874, it was amended; and on the 24th of the same month, at the time for the defendant to plead, it appeared by attorney and filed its plea, and at the same time presented to the court a petition for the removal of said cause to the circuit court of the United States for the western district of Michigan. This petition was in the usual form, showing the amount in controversy, and that the parties were residents and citizens of different states; and it was accompanied by the usual affidavit of merits and prejudice, and the usual bond. Said state court of Michigan took the petition under advisement, and on the 11th of September, 1874, entered an order in the cause denying the prayer for a removal; and on the next day, upon the defendant's application, an order was entered continuing the cause in said court until the next term thereof. On the 3d of May, 1875, being the first day of the next term of said state court, the defendant again appeared therein, and filed with the clerk thereof a new verified petition, in the form required by the act of March 3, 1875, accompanied by an affidavit of prejudice and showing citizenship in different states, and the usual bond, signed by the officers of said defendant and one surety, who justified, all residing in and being citizens of Wisconsin; and such verification, affidavit and justification were each sworn to before a notary public at and residing in Milwaukee, Wisconsin. On the 5th of May, 1875, said state court of

Johnson vs. The Brewers' Fire Ins. Co. of America.

Michigan, after having heard and considered said petition, ordered that the prayer thereof be denied; and thereupon, and after said defendant declined to further proceed in said state court, it caused damages to be assessed against the defendant and in favor of said Boswell, in the sum of $2,140, besides his costs and charges in the action, and, upon motion of said Boswell's attorney, rendered judgment in Boswell's favor against the defendant, for the damages so assessed, together with the costs and charges aforesaid, to be taxed.

On the 17th of May, 1875, the clerk of said state court furnished certified copies of the several papers for removal so filed with him. On the 19th of the same month, F. W. Cotzhausen made his affidavit, from which it appeared that he was the general attorney and counsel of the defendant company; that, when informed of the order of the state court on the petition for removal, he caused repeated requests to be made to the clerk thereof for copies of the pleadings, proceedings and record in said cause, and also caused the legal fees for such copies to be tendered, but had been able to procure only a portion of the records of said cause; and also that he had " caused further requests to be made for copies of all the other papers, pleadings and of the record in said case," but had not yet received the same. This affidavit, with copies of a portion of said records, were filed with the clerk of said United States court May 20, 1875; and on the 28th of the same month, certified copies of the whole of said records were filed with said clerk. From certified copies of the records of said United States court, it appears, that on the 26th of January, 1876, Boswell, by his attorneys, filed his appearance in that court, and moved said court upon the transcript on file therein, sent from said state court, to remand the cause to said state court; that this motion was denied; and that on the same day Boswell's attorneys entered a rule in said court for the defendant to appear and plead to the declaration. In September, 1879, Boswell assigned to the plaintiff the judgment so entered in

Johnson vs. The Brewers' Fire Ins. Co. of America.

said state court of Michigan. This action was afterwards brought in the county court of Milwaukee county, upon said judgment. The defendant pleaded *nul tiel record*. Upon the trial, the court ruled out said removal papers, and directed a verdict for the plaintiff, upon which judgment for $3,015.74 was entered. The defendant appealed from that judgment.

For the appellant there were briefs by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *Mr. Cotzhausen*.

For the respondent there was a brief by *Dixon, Noyes & Dixon*, and oral argument by *Mr. Noyes*.

Cole, C. J. This is an appeal from the judgment of the county court of Milwaukee county in favor of the plaintiff and against the defendant. The action in the county court was founded upon a judgment recovered in the circuit court for Menominee county, in the state of Michigan, in favor of one Boswell against the defendant, which judgment had been assigned to the plaintiff below before suit brought. The defendant answered in this action, *nul tiel record*. Upon the trial, the plaintiff introduced an exemplified copy of the record of the suit in the Michigan court, showing the rendition of the judgment sued upon, and also proved an assignment of the same to the plaintiff. It appeared, by the judgment roll in evidence, that a verified petition and bond for removal of the cause to the United States circuit court were filed in the state court on the 24th of August, 1874, and a motion by the defendant for a removal was made, which was denied on the 11th of September following. Thereupon the defendant made a motion for the continuance of the cause, which motion was granted. It appears that a second petition and bond for removal to the United States court were filed on the 3d day of May, 1875. A motion for a removal was again made, which was denied on the 5th of that month. Thereafter the case was called for trial, damages were assessed by a jury in the absence of the defendant, and the judgment sued upon was rendered.

These are the material facts upon which the real question of law arises upon this appeal. That question is, Do these matters set forth in the record of the state court of Michigan show that the judgment of that court was not merely voidable for error, but absolutely void? It is apparent that that is the only question which is open for our consideration — whether, indeed, the Michigan court lost all jurisdiction to proceed in the cause, after the application was made, under the provisions of the act of congress for its removal into the circuit court of the United States. Mere error in the proceedings of the state court cannot be corrected by this court, or reviewed here, for the obvious reason that we have no revisory power over that court. But it is claimed by the learned counsel for the defendant, that, as soon as application was made to the state court, in conformity to the acts of congress, for a removal of the cause, *eo instanti* the state court lost all jurisdiction over it, and every subsequent step therein was *coram non judice*, and the judgment rendered was null and void.

In this case counsel insists that the application for the removal was sufficient in form and reasonable in time, and ousted the jurisdiction of the state court, and that in this collateral action we should hold that the record shows an entire want of jurisdiction to render the judgment sued upon. A majority of the court is not prepared to adopt this view of the law. In dissenting from it we hold that when the case is within the act of congress, and an application in proper form for its removal is made, it is the duty of the state court to accept the petition and bond, and proceed no further in the suit. This is the mandate of the statute. But if the state court declines to relinquish its jurisdiction, and proceeds to judgment, such judgment is not void, but erroneous merely. Until it is reversed or set aside in a proper manner by an appellate court, it is valid and must be respected; certainly, in a collateral action upon it. The defendant had an ample remedy to correct the decision of the state court refusing to remove the

Johnson vs. The Brewers' Fire Ins. Co. of America.

cause and proceeding to judgment. It might have brought the case before the supreme court of the state by appeal or writ of error; and if the decision of the court below had been affirmed, it could have taken the case to the supreme court of the United States. But if the position of defendant's counsel is sound, that the judgment rendered by the state court was *coram non judice* and void, it doubtless may be assailed in this collateral action; for, as we understand the law, a void judgment can be the foundation of no legal right, and its validity may be challenged wherever it is attempted to be enforced. But a voidable or erroneous judgment can be questioned only in a direct proceeding, and, until avoided, may be the foundation of valuable rights. The distinction, therefore, between a void and voidable judgment is of great practical importance, especially in cases of this nature. "Whatever *may be avoided*, may, in good sense, to this purpose, be called void, and this use of the term *void* is not uncommon in the language of statutes and of courts. But, in regard to the consequences to third persons, the distinction is highly important; because nothing can be founded upon what is *absolutely void*, whereas, from those which are only voidable, fair titles may flow. These terms have not always been used with nice discrimination; indeed, in some books, there is a great want of precision in the use of them." PARKER, C. J., in *Somes v. Brewer*, 2 Pick., 184; *Crocker v. Bellangee*, 6 Wis., 645; *Bromley v. Goodrich*, 40 Wis., 131.

We are not aware that the precise question we are considering has ever been passed upon by the supreme court of the United States. There are doubtless some *dicta* and many expressions to be found in the decisions of the federal courts, to the effect that, if the case is removable and the proper application is made therefor, the jurisdiction of the state court is ousted, and all subsequent proceedings in the cause in that court are *coram non judice*. But it is doubtful if this language, in the connection in which it is generally used, really means

anything more than that such subsequent proceedings were erroneous. Judge Dillon, a very high authority on this point, in his monograph on the removal of causes, uses this language: "If the case be within the act of congress, and the petition is in due form, accompanied with the offer of the required surety or bond, the statute is that the state court *must* accept the surety, or the petition and bond, and proceed no further in the case. Under such circumstances the state court has no power to refuse the removal, and can do nothing to affect the right, and its *rightful* jurisdiction ceases *eo instanti*, no order for the removal is necessary, and every subsequent exercise of jurisdiction by the state court, including its judgment, if one is rendered, is erroneous." 3d rev. ed. 1881, § 75. In a note to the text he says: "We purposely use the phrase, 'the *rightful* jurisdiction ceases *eo instanti*,' and a subsequent judgment of the state court 'is erroneous;' we do not say null and void. Such a judgment is perhaps valid unless reversed or set aside, but in many of the cases every subsequent exercise of jurisdiction is said to be null and void, and every step *coram non judice.*"

In the *Removal Cases*, 100 U. S., 457, the court held that the suit in the state court was within the act of congress, and that a proper application, both as to form and time, for its removal to the circuit court of the United States, was made. The state court had denied the removal upon grounds which the United States supreme court pronounced untenable or insufficient. In considering the sufficiency of the bond, the learned chief justice says: "The question here is not whether the court below had the right to pass upon the sufficiency of the surety, but whether, upon the facts as they appear in this record, it was justified in refusing to accept the bond. We are now examining the case, after judgment below, in reference to errors which are alleged to have occurred in the progress of the cause. If the state court refuses to accept a bond offered by a petitioner for removal which has 'good and sufficient surety'

in law, it is error that may be reviewed here. The court has no discretion in such a matter. Its action is governed by fixed rules. Here, as no objection was made to the pecuniary responsibility of the one person who signed as surety, and was competent under the laws of Iowa to do so, it was clearly error for the court to refuse to accept the bond because a second surety was an attorney of the court. Such being the case, we are clearly of opinion that, so far as the form of the application was concerned, the state court was not justified in refusing to accept the petition and bond, and in proceeding further in the cause." Page 472.

In another part of the opinion, when considering whether it appeared that the controversy about which the suit in the state court was brought was between citizens of one or more states on one side, and citizens of other states on the other side, he said: "We fully recognize the principle, heretofore asserted in many cases, that the state court is not required to let go its jurisdiction until a case is made which, upon its face, shows that the petitioner can remove a cause as a matter of right. But here, to say nothing of the statements in the petition which were not disputed, the record is full of evidence that Dennison was a citizen of Ohio. . . . Under these circumstances, it was certainly error for the state court to retain the cause because it was not shown that the citizenship of the adverse parties was in different states. . . . We must therefore hold that the supreme court of the state erred in not reversing the judgment of the circuit court of the county, and sending the cause back with instructions to that court to proceed no further with the suit."

It will be seen that the distinguished chief justice, in these remarks, *ex industria*, as it were, avoids declaring the proceedings in the state court, after the application for removal was made, void for want of jurisdiction. He does say: "We are now examining a case, after judgment below, with reference to *errors;*" declares that "it was *clearly error* for the court.

below to refuse to accept the bond;" that "it was *certainly error* for the state court to retain the case;" but says nothing about the judgment being void, or the proceedings being *coram non judice.*

It is true that in *The New Orleans, M. & T. Railway v. State of Mississippi,* Ch. Legal News, Dec. 4, 1880, Mr. Justice HARLAN, while considering the question whether the controversy in that case came within the acts of congress so as to entitle the defendant corporation to a removal of the suit from the state court to the United States circuit court, says: "Whether we look to the federal question raised by the state in its original petition, or to the federal question raised by the company in its answer, the inferior state court erred, as well in not accepting the petition and bond for the removal of the suit to the circuit court of the United States, as in thereafter proceeding to hear the cause. It was entirely without jurisdiction to proceed after the presentation of the petition and bond for removal." But this was said in reviewing the decision of the supreme court of the state on error in the suit itself, and the learned judge may have only meant, by this language, that the state court could exercise no "rightful jurisdiction" over the cause subsequent to the application for removal. Indeed, all the cases which have come before the United States supreme court involving this question of removal, have been brought there either by writ of error to the highest state court, or on appeal from or error to the United States circuit court. Consequently, that court has had no occasion to pass upon the distinct question arising on this record. It is important that there should be an authoritative decision of that court upon the point. The majority of this court do not think it a fair interpretation of the decisions of that court, as they now stand, to say that it has decided that if the state court asserts its jurisdiction after a proper application for a removal is made, and renders a judgment, such judgment is absolutely null and void.

In my opinion in *Knorr v. Ins. Co.*, 25 Wis., 143, I stated that the supreme court of the United States would doubtless pronounce all of the proceedings in the state court, after a proper application for a removal was made, as *coram non judice*. In the light of the later decisions of that court, I think such an inference unwarranted.

The learned counsel for the plaintiff contended that the state court of Michigan properly denied both applications for a removal, because the conditions of the act of congress were not complied with in either case. In the view we have taken we have not felt called upon to consider that question. We have assumed that the state court erred in not removing the cause on the application made. But we hold that its subsequent judgment was not rendered void for that reason. If the state court erred in its decision upon that point, this court, in an action upon its judgment, has no power to correct that error. The state court certainly obtained jurisdiction over the person and subject matter of the action; and, unless that jurisdiction was completely ousted by the applications for removal, its judgment, though erroneous, was not void.

The judgment of the county court must therefore be affirmed.

CASSODAY, J. The fact that the supreme court of the United States is the final arbiter of the questions involved, would seem to require a brief statement of the reasons which impel dissent from the views of the majority of the court in this case. The opinion filed brings the questions into very narrow limits. It is virtually conceded that the petition and bond filed May 3, 1875, were in time, and each in strict conformity with the requirements of the act of March 3, 1875. The application was at the first term of the court after the passage of the act, and was therefore in time. *Removal Cases*, 100 U. S., 473; *Bible Society v. Grove*, 101 U. S., 610. It is true, counsel for the plaintiff urged that the verifications were defective, because they were taken before a notary public in Wisconsin. The mere fact that

affidavits taken before a notary public outside of Michigan could not be read in court under the statutes of Michigan, would seem to have no application here, since the right to removal was secured by complying with the act of congress and not the statutes of Michigan. The right of removal cannot be restricted by state legislation. *Railway Co. v. Whiton*, 13 Wall., 270; *Ins. Co. v. Morse*, 20 Wall., 445. It would seem that § 1778, R. S. U. S., 316, in force at the time, was sufficient to authorize the notary to administer the oath. But it is unnecessary to consider whether a notary public was authorized, at the time, to administer oaths, since it has been settled that such objection is of no avail. In the *Removal Cases*, 100 U. S., 457, the petition was neither signed nor sworn to, but was held to be sufficient. Pages 463, 470-1. Besides, as stated, it already appeared from the record that the defendant was a corporation of Wisconsin, and that the insurance was upon the hotel of the plaintiff's assignor situated in Michigan; and hence it pretty clearly appeared that the controversy was between citizens of different states, within the meaning of the act of congress.

It was also urged by counsel, that the bond was not properly signed by the defendant, nor under the corporate seal, and that the surety therein did not reside in Michigan. It was executed by the president and secretary of the company, and by William H. Jacobs, as surety, who justified in "the sum of ten thousand dollars above his debts and liabilities, exclusive of property exempt by law from execution." In the *Removal Cases*, 100 U. S., 457, it was held that the bond, which was not signed by the petitioners (who were non-residents), in person, but only by their attorneys, was sufficient, and hence improperly rejected by the state court. Here, as in that case, "no objection was made to the sufficiency of the surety;" and hence the state court had "no discretion in such a matter." Page 472. In *Mix v. Ins. Co.*, 74 N. Y., 53, it was held, that the state court, on such application, could not

arbitrarily reject a bond tendered, which was sufficient in form, without specifying any cause; that defects should be pointed out in order that they might be remedied; and that it could not be assumed that a denial of the petition without such specification was on account of any insufficiency in the bond. The same was there held to be true with respect to a defective certificate to the affidavit. See also *The Empire T. Co. v. Richards*, 88 Ill., 404. Apparently the refusal of the application by the state court of Michigan was not based upon any particular objection or irregularity in the form of the papers, or any alleged insufficiency of the sureties, but broadly for want of legal right. Upon such refusal, the defendant withdrew from the case; and thereupon the court caused the damages to be assessed, and judgment to be entered. Thereupon the defendant in due time caused certified copies of the records in the case to be duly filed in the federal court of Michigan, which thereupon took jurisdiction of the case, and denied the motion of the plaintiff therein to remand the cause to the state court. "The only question," therefore, to use the language of the opinion filed, "is, whether, indeed, the Michigan court lost all jurisdiction to proceed in the cause, after the application was made, under the provisions of the act of congress for its removal into the circuit court of the United States."

It seems to be conceded that it was "the duty of the state court to accept the petition and bond, and proceed no further in the suit," but that since, contrary to "the mandate of the statute," it declined to relinquish its jurisdiction and proceeded to judgment, "such judgment is not void, but erroneous merely." Is this construction of the act of congress, thus tersely stated in the opinion, in harmony with the adjudications of the supreme court of the United States, to which this and all other state tribunals, on all federal questions, are bound ultimately to yield obedience?

In *Gordon v. Longest*, 16 Peters, 97, the Kentucky state court refused the application for removal to the circuit court

of the United States, and proceeded to trial and judgment, which was affirmed in the highest court of the state, but was reversed on writ of error in the supreme court of the United States. After quoting the 12th section of the judiciary act of 1789, which provides that, upon filing the proper papers, "it shall then be the duty of the state court to accept the surety, and proceed no further in the cause," McLean, J., giving the opinion of the court, said: "The defendant was entitled to a right under the law of the United States, and, on the facts of the case, the judge had no discretion to withhold that right. No objection can be made to the form of the application, nor to the facts on which it was founded. This being clear, in the language of the above act, it was the duty of the state court 'to proceed no further in the cause.' And every step subsequently taken, in the exercise of a jurisdiction in the case, whether in the same court or in the court of appeals, was *coram non judice.* . . . One great object in the establishment of the courts of the United States and regulating their jurisdiction, was, to have a tribunal in each state, presumed to be free from local influence, and to which all who were non-residents or aliens might resort for legal redress. But this object would be defeated if a state judge, in the exercise of his discretion, may deny, to the party entitled to it, a removal of his cause. A more summary remedy might have been pursued by the defendant than the one which this court can now give to him." Page 104.

In *Kanouse v. Martin*, 15 How., 198, a state court in the city of New York refused an application to remove the cause to the circuit court of the United States; and thereupon judgment was entered, which was affirmed on writ of error by the superior court (*Kanouse v. Martin*, 3 Sandf. S. C., 593), and which was then taken by a writ of error to the supreme court of the United States, where a motion to dismiss for want of jurisdiction was denied (14 How., 23), and subsequently the judgment was reversed. Curtis, J., giving the opinion of the

court, said: "His (the defendant's) right to remove the suit being complete, he could not be required, consistently with the act of congress, to follow it further in the court of common pleas; and the power of that court being terminated, it could not lawfully render a judgment against him; and it is of that judgment he now complains." 15 How., 211.

While the action of *Whiton v. Railway Co.* was pending in the circuit court for Jefferson county, an order for removal to the federal court was made on application of the plaintiff, from which order the defendant appealed to this court, and obtained a stay of proceedings on the order. A majority of this court reversed the order, on the ground that the removal act was invalid, and the cause was thereupon remanded for further proceedings in the state court. 25 Wis., 424. That decision was never reversed. From the decision DIXON, C. J., dissented, on the ground that, in his opinion, the act of congress was valid, and could not be defeated by state legislation. 25 Wis., 435. With that dissenting opinion I fully concur. But, notwithstanding the appeal to this court in that case, the stay of proceedings, and the adjudication thereon that the federal court got no jurisdiction by such order of removal, but that the same was retained by the state court, the plaintiff therein, regardless of the proceedings in the state courts, procured copies of the papers in the cause from the record in the state court, and filed the same in the federal court, which at once took jurisdiction of the case, and the same was tried therein and judgment rendered for the plaintiff, and the same was affirmed in the supreme court of the United States. 13 Wall., 270. FIELD, J., giving the opinion of the court, seemed to regard it as immaterial whether the removal should be regarded as "an exercise of appellate jurisdiction," or as an indirect method of acquiring " original jurisdiction " of the case, as in either event its validity had been uniformly recognized by that court. He said: " The judicial power of the United States extends by the constitution to controversies between citizens of different states,

as well as to cases arising under the constitution, treaties and laws of the United States; and the manner and conditions upon which that power shall be exercised, except as the original or appellate character of the jurisdiction is specially designated in the constitution, *are mere matters of legislative discretion.*" . Page 288.

The affirmance of the judgment of the federal court by the supreme court of the United States, nearly two years after the majority of this court had held that the federal court could not take jurisdiction, but that the same must be retained by the state court, can logically be maintained only on the theory that all proceedings in the state courts subsequently to the order of removal were *coram non judice.* Any other theory would subject parties to conflicting judgments in the same case without any possible remedy, besides leading unnecessarily to conflicts between federal and state authorities in the enforcement of such conflicting judgments.

In the *Ins. Co. v. Dunn,* 19 Wall., 214, the facts were quite similar to *Whiton v. Railway Co.,* except that the order for removal was made upon the application of the defendant, and the plaintiff appealed to the supreme court of Ohio and there reversed the order, and then proceeded to trial and judgment in the state court, which was taken for review to the supreme court of the United States on writ of error, and there reversed, on the ground that the action of the state court was a "usurpation," and that the federal court had jurisdiction. SWAYNE, J., delivering the opinion of the court, said: "The cause was out of the common pleas and in the circuit court. The former had jurisdiction to remit and the latter to receive it. Being in the latter, that court had jurisdiction to retain it. If there were error on the part of the circuit court in overruling the motion to dismiss, because the case had been improperly brought there, the remedy should have been sought in the federal courts. The state courts were incompetent to give it. The authority of the latter was at an end until the case should be restored, if that

were ever done, by the action of the former. . . . The conditions prescribed having been complied with, the act of congress expressly required the state court where it was originally pending ' *to proceed no further in the suit.*' The further proceedings of the common pleas was a clear case of *usurped* jurisdiction. The illegality was gross. The action of the district and supreme court of the state gave them no validity. The maxim, that consent cannot give jurisdiction, applied with full force. *Gordon v. Longest*, 16 Peters, 97, is exactly in point, and conclusive." Pages 223-4.

Thus the reversal was put upon the ground that the cause had been pending in the circuit court of the United States ever since the order of removal, and was still there, and hence the significance of the order of the supreme court of the United States in remanding the case on such reversal. It was this: "And the district court and the court of common pleas will be directed to *proceed no further in the suit.*" That case was approved in the *Ins. Co. v. Morse*, 20 Wall., 445, where it was held (reversing the decision of this court and directing a removal), that the right of removal could not be obstructed or taken away by a state statute and on agreement of the parties under it not to remove the cause; and the doctrine was reiterated, per HUNT, J., who gave the opinion of the court, that the party who complied with the terms of the act of congress had " an unqualified and unrestrained right to have the case transferred to the federal courts;" and " that no power of action thereafter remained to the state court, and that every question, necessarily including that of its own jurisdiction, must be decided in the federal court." Page 454.

In *French v. Hay*, 22 Wall., 250, it was held, that, " when, in a case which is properly removed from a state court, under one of the acts of congress relating to removals, into the circuit court of the United States, a complainant, getting a decree in the state court and sending a transcript of it into another state, sues the defendant on it there, the circuit court into

which the case is removed may enjoin the complainant from proceeding in any such or other distant court until it hears the case; and if, after hearing, it annuls the decree in the state court, and dismisses, as wanting equity, the bill on which the decree was made, may make the injunction perpetual." That decision would seem to have authorized the circuit court of the United States for the western district of Michigan to enjoin the plaintiff in this case from proceeding in the state court of Wisconsin. In that case SWAYNE, J., said: "While the jurisdiction [of the United States court] lasted, it was *exclusive*, and could not be trenched upon by any other tribunal." Page 253.

*Gaines v. Fuentes*, 92 U. S., 10, was error to the supreme court of Louisiana on affirmance of the order refusing a removal, which was reversed, and in giving the opinion of the court, FIELD, J., said: "It rests entirely with congress to determine at what time the power may be invoked, and upon what conditions,— whether originally in the federal court, or after suit brought in the state court; and, in the latter case, at what stage of the proceedings,— whether before issue or trial, by removal to a federal court, or after judgment, upon appeal or writ of error." Page 18.

Such were the constructions put upon the removal acts of congress by that court to which all others must finally submit on such questions, prior to the act of March 3, 1875. According to those constructions, it would seem that congress had power, at the time of the passage of that act, to give to the federal courts exclusive jurisdiction of all " controversies between citizens of different states," notwithstanding such suits might then be pending in state courts. The constitutionality of that act has not been assailed, and has too often been affirmed by the supreme court of the United States to be longer controverted. The act, however, did not go so far, but by the first section expressly left with the state courts "concurrent" jurisdiction in such controversies. But the second

section gave to "either party" to such controversy, in actions then pending or thereafter brought in any state court, where the matter in dispute exceeded, exclusive of costs, the sum of five hundred dollars, the right to remove the same to the circuit court of the United States for the proper district. The third section provides that where such party in a proper case complies with the required condition, "it shall then be the duty of the state court to accept said petition and bond, *and proceed no further in such suit;*" and that, upon copies of the papers being filed in the federal court, "the cause shall then proceed in the same manner as if it had been originally commenced in the said circuit court" of the United States. The fifth section expressly authorizes the federal court to determine whether the cause is or is not properly removed, and to act accordingly. The seventh section empowers the federal court to punish clerks of the state courts in case of their refusal to furnish copies of the records as provided in the act; and also provides for procuring such copies by writ of *certiorari* to the state court, commanding it "to make return of the record in any such cause *removed* as aforesaid," and for procuring copies in other methods. It would thus seem to be one of the very objects of the act to prevent state courts or their officers from interposing any obstruction to such removal. The act nowhere requires any order of removal to be made, but simply commands the state court, upon the party's complying with the provisions of the act, to "proceed no further in such suit." Here the defendant, within the time required, complied with all the requisite conditions, and yet the state court of Michigan, instead of obeying the command to "proceed no further in such suit," in direct violation of the statute, did proceed to trial and judgment. Having proceeded in violation of the act of congress, the question occurs, whether the proceedings, so taken in direct violation of law, are to be regarded as mere errors or as absolute nullities.

In the *Removal Cases*, 100 U. S., 472, the chief justice, in

giving the opinion of the court as to the effect of a party complying with the conditions of removal, said: "That court [the state court] has no discretion in such a matter. Its ac-tion is governed by fixed rules." So it may well be implied, from what he says on pages 474-6, that it was the duty of the state court " to let go its jurisdiction," and that the re-moval was complete, and that the federal court had acquired jurisdiction. It is true, the opinion speaks of the action of the state court as error; but the mandate to the state court on reversal was, " to proceed no further with the suit." This was, of course, on the theory that the suit had in fact been re-moved to the federal court.

In the recent case of *Railroad Co. v. Mississippi*, 102 U. S., 135, the state court refused to remove, notwithstanding the party complied with the conditions of the act; and such re-fusal was affirmed by the supreme court of the state, but was reversed on error by the supreme court of the United States, and the cause remanded with directions to the state court to " proceed no further in the suit." HARLAN, J., giving the opinion of the court, said: " If the suit was one which the company was entitled under the statute to have removed into the circuit court of the United States, then all that occurred in the state court after the filing of the petition and bond, was in the face of the act of congress. . . . . Its duty, by the express command of the statute, was, the suit being re-movable, to accept the petition and bond and proceed no further." Page 136.

Again, after showing at some length that the case was re-movable, he said: " It [the state court] was entirely without jurisdiction to proceed after the presentation of the petition and bond for removal." Page 141.

It is true, the precise question here presented was not in-volved in any of the above cases; but the inexorable logic of them all seems to lead to but one conclusion. That conclusion seems to be, that where a party entitled to removal complies

with all the requisite conditions, the state court is *ipso facto* ousted of jurisdiction; and, whether the order of removal has been granted or denied by the state court, all further proceedings therein are *coram non judice* and void. This has been frequently held, not only by inferior federal courts, but by the courts of last resort in several of the states. *Shaft v. The Phœnix Ins. Co.*, 67 N. Y., 544; *Bell v. Dix*, 49 N. Y., 232; *Holden v. Ins. Co.*, 46 N. Y., 1; *Stevens v. Ins. Co.*, 41 N. Y., 149; *Berry v. Railroad Co.*, 64 Mo., 533; *Stanley v. Railroad Co.*, 62 Mo., 508; *Herryford v. The Ætna Ins. Co.*, 42 Mo., 148; *Clark v. D. & H. Canal Co.*, 11 R. I., 36; *Fisk v. Railroad Co.*, 6 Blatchf. C. C., 362; *S. C.*, 8 Blatchf. C. C., 243; *Jones v. The Amazon Ins. Co.*, 9 C. L. N., 68; *The State ex rel. Hodson v. Circuit Judge*, 33 Wis., 127. The able opinions of Judge DRUMMOND in construing the act of March 3, 1875, fully sustain the position here taken. *Osgood v. Railroad Co.*, 7 C. L. N., 241–2; *Scott v. Railroad Co.*, 6 Biss., 529. Many other cases might be cited to the same effect.

The defendant here, having complied with all the requisites which entitled it to a removal of the cause to the federal court, the act of March 3, 1875, commanded the state court of Michigan, upon the filing of the papers therein, to accept the same and proceed no further in the suit.

The constitution of the United states, and the acts of congress made in pursuance thereof, are, beyond question, the supreme law of the land; and the judges in every state are bound thereby, anything in the constitution and laws of any state to the contrary notwithstanding. Art. 4, Const. U. S. The act of March 3, 1875, which contains the above command, has frequently been declared constitutional by the supreme court of the United States. The command to proceed no further in the suit would seem, therefore, to have been imperative upon the state court of Michigan, and just as binding upon the state courts of Wisconsin when their action is based wholly upon the proceedings had in violation of the United States statute.

Had that court obeyed the law and granted the removal, no one would claim that it would thereafter have had jurisdiction to proceed and try the cause and enter judgment as it did. Since this is so, it would seem to follow that it retained jurisdiction to hear, try and determine the case, if at all, by disobeying the law and proceeding in violation of it — and that, too, upon a question of jurisdiction. If the arbitrary decision of a judge of the state court, in direct violation of the act of congress, is to be regarded as binding until reversed on error, then it would seem that such decision must have the effect, for the time being, of setting aside and abrogating the act of congress.

Such a theory would make the removal and transfer of jurisdiction depend, not upon the law and the facts and proceedings in a given case, but upon the arbitrary edict of the judge of the state court to which such application happened to be made. If the arbitrary decision of the state judge of inferior jurisdiction is to have such binding effect until reversed as for mere error, then it follows, as a logical sequence, that the federal court can take no jurisdiction at all until such error is corrected on appeal to the highest court of the state, or, upon failure there, then on writ of error to the supreme court of the United States. If this is so, then, as the state court may always arbitrarily deny an application for removal, it is within their power to entirely nullify so much of the act of congress as declares that such court shall "proceed no further in such suit," and at once transmit the record to the federal court, or at least suspend it for years and until the final decision of the supreme court of the United States, which, upon that theory, could only be made available under the mandate of that court and through the machinery of the state courts. It would, moreover, nullify that part of the act of congress authorizing the federal court to take jurisdiction and proceed as if the suit had been originally brought in that court. It would also nullify that portion of the act of congress which authorizes the federal court to compel a return to it of the

record in the cause by the state court or clerk upon writ of *certiorari*. Such a construction would unnecessarily lead to interminable confusion and conflicts of jurisdiction between the state and federal courts, which, according to some of the authorities cited, was the very thing which congress by the act in question sought to obviate. Nor would these difficulties be obviated, but rather increased, by holding that upon the filing of the papers and refusal of the application by the state court, the federal court acquired the same jurisdiction which it is claimed was also retained by the state court. The absurdity of holding that a federal court could acquire jurisdiction of a case pending in a state court without the state court's losing jurisdiction of the same case, would seem to be too obvious for argument.

The constitutionality of the act of congress having been established beyond controversy by the highest judicial tribunal in the land, and being convinced that, upon the filing of the removal papers in question, it became the imperative duty of the state court of Michigan " to accept said petition and bond and proceed no further in such suit," but at once, and upon tender of payment of legal fees, to transmit the papers to the federal court, it would seem that its refusal to obey that command of the act of congress, and its action in proceeding in violation of it to trial and judgment, was *coram non judice* and void. For the same reason it would seem that the federal court properly took jurisdiction and refused to remand the cause. Such jurisdiction, according to some of the authorities cited, took effect as of the date of filing the papers in the state court. So believing, and with great deference to the views of a majority of the court, I am forced, with one of my associates, to dissent from the opinion filed in this case.

TAYLOR, J., concurred in the view expressed by CASSODAY, J.

*By the Court.*— Judgment affirmed.