## WILKINSON and others *v.* DELAWARE, L. & W. R. Co.

*(Circuit Court, D. New Jersey.* November 20, 1884.)

1. REMOVAL OF CAUSE—FOREIGN CORPORATION—LEASE OF RAILROAD IN ANOTHER STATE—ENABLING ACTS.

A railroad corporation chartered in one state does not become a domestic corporation in another state by virtue of leasing, purchasing, and operating roads in that state under certain enabling acts of the legislature.

2. SAME—TIME OF APPLICATION—ACT OF MARCH 3, 1875, *c.* 137, § 3.

The clause "before or at the term at which the cause could be first tried," in the removal act of 1875, means at the time when, by the usual orderly course of practice, under the rules of the court, the case could be set down for trial, if an action at law, or for final hearing, if an equity case.

Motion to Remand Cause.

*Geo. B. Ely,* for plaintiff.

*Bedle, Muirheid & McGee,* for defendant.

NIXON, J. Two reasons are assigned why this cause should be remanded to the state court: (1) Because the defendant corporation, although chartered by the state of Pennsylvania, has become a citizen of New Jersey, as lessee of the Morris & Essex Railroad Company, and by the legislature of the state of New Jersey validating and confirming the said lease; (2) because the petition for removal was filed too late.

1. The Morris & Essex Railroad Company, a corporation of the state of New Jersey, on the tenth of December, 1868, made and executed to the defendant corporation of the state of Pennsylvania a lease of its railroad, road-bed, and franchises, and all its property of whatever kind, to be held by the last-named company for and during the continuance of the charter of the first-named company, or any renewal of the same, upon its assuming the debts of the lessor and paying an annual dividend of 7 per cent. to the holder of its outstanding capital stock. The legislature of New Jersey, on the ninth day of February following, passed an act confirming the lease, and all the provisions, contracts, and conditions contained therein, and authorizing the defendant corporation to hold, use, occupy, and enjoy all said property, franchises, and powers granted and demised to them, and to operate the railroad and its branches in the way and upon the condition, in all respects, and not otherwise, as authorized by the act of incorporation of the said lessor company. When this lease was made there was no law in New Jersey which authorized the railroad companies of the state to lease their property and franchises to foreign corporations, and the act above referred to was passed to enable the Delaware, Lackawanna & Western Company to exercise its franchise, and transact its business, inside of the state of New Jersey under the powers and privileges conferred upon the Morris & Essex Railroad Company. It was simply an enabling act, and contained no provision

which in any sense constituted the Delaware, Lackawanna & Western
Railroad Company a New Jersey corporation.

The case of *Railroad Co.* v. *Harris,* 12 Wall. 65, was largely relied
on by the learned counsel for the plaintiff in support of the view that
the defendant corporation became a citizen of New Jersey by the lease,
and by the legislation consequent upon it. In our judgment, that case,
properly interpreted, holds just the contrary. It was there contended
that, although the original charter of the Baltimore & Ohio Company
was granted by the state of Maryland, the subsequent legislation on
the part of congress authorizing an extension into the District of Co-
lumbia, and by the state of Virginia, conferring power to run and oper-
ate their road through that state, in fact created new corporations
existing in the District and in Virginia. But the supreme court said
that this was not the correct view; that in the legislation both of con-
gress and of Virginia the original Maryland act was referred to, but
neither expressly nor by implication was a new corporation created.
"The company was chartered," says Mr. Justice WAYNE, speaking
for the whole court, "to construct a road in Virginia as well as in
Maryland. The latter could not be done without the consent of Vir-
ginia. That consent was given upon the terms which she thought
proper to prescribe. With a few exceptions, not material to the ques-
tion before us, they were the same as to powers, privileges, obliga-
tions, restrictions, and liabilities as those contained in the original
charter. The permission was broad and comprehensive in its scope,
but it was a license, and nothing more. It was given to the Mary-
land corporation as such, and that body was the same in all its ele-
ments and in its identity afterwards as before.  *  *  *  For pur-
poses of federal jurisdiction, a corporation is regarded as if it were a
citizen of the state where it is created, and no averment or proof as
to the citizenship of its members elsewhere will be permitted." See,
also, *Railway Co.* v. *Whitton,* 13 Wall. 284, and *Railroad Co.* v. *Koontz,*
104 U. S. 5, to the same effect.

If further authority upon this point is needed, the case of *William* v.
*Missouri, K. & T. Ry. Co.* 3 Dill. 267, may be referred to. There the
defendant corporation was sued in the state court by a citizen of Mis-
souri to recover damages for being forcibly ejected from a train of the
company in that state. The case was removed into the United States
circuit court for the Western district of Missouri. On a motion to
remand it was insisted that the corporation, although originally char-
tered by the legislature of Kansas, had become a domestic corpora-
tion of Missouri by virtue of leasing, purchasing, and operating roads
in that state under certain enabling acts of the legislature. The court
refused the motion to remand, regarding such legislation as not creat-
ing new corporations, but simply authorizing foreign corporations to
hold and operate roads outside the limits of their charter. See *Cal-
lahan* v. *Louisville & N. R. Co.* 11 FED. REP. 537.

2. With regard to the second point, the record shows that by the

pleadings the case was brought to an issue July 12, 1884, in the circuit court of the county of Hudson. The third section of the removal act of March 3, 1875, requires, in order to remove a suit from the state to the federal court, that the petition for removal be filed in the state court before or at the term at which the cause could be first tried, and before the trial thereof. Numerous decisions have been found to the effect that the clause "before or at the term at which the cause could be first tried," means at the term when, by the usual, orderly course of practice, under the rules of the court, the case could be set down for trial, if an action at law, or for final hearing, if an equity case. *Wanner* v. *Sisson,* 28 N. J. Eq. 117; *Scott* v. *Clinton & S. R. Co.* 6 Biss. 529; *Meyer* v. *Norton,* 9 FED. REP. 433; *Wheeler* v. *Ins. Co.* 12 Reporter, 563; *Aldrich* v. *Crouch,* 10 FED. REP. 305.

The practice act of New Jersey, § 167, enacts that every cause shall be tried at the next term after issue joined. In this case, the next term after issue joined was the September term of the Hudson county circuit. It is true that the April term was still open, and that section 168 of the practice act authorizes notice of trial to be given for a day in term if the cause is not at issue in season to be noticed for the first day of the term; but that is not the ordinary or orderly method of procedure. It only makes provision for a special case, which the parties are not obliged to avail themselves of. The cause was set down for trial at the next term after issue joined, to-wit, the September term, according to the requirements of the law and the rules of court. At the opening of the term, the court, according to custom, assigned a day certain for the trial, to-wit, October 1, 1884, and before the arrival of that day the parties agreed to a continuance to the sixteenth of October to suit their personal convenience. On the fifteenth of October, and without the interference of the parties, the judge of the court announced that he would not be able to hear any more jury cases at the pending term, and, in consequence of this, the cause stood over until the next term of the court. On the following day, and while the term of the court was still running, the petition for removal was filed, and the removal effected.

We think that the act under consideration gave to the petitioner until the end of the September term, and before the trial, to remove the cause, and that the defendant corporation made application in time. The motion to remand must be denied.