CLAUDIA ROWE ET AL. V. RICHARD GRIFFITHS ET AL.

FILED JANUARY 19, 1899. No. 8616.

1. **Summons:** SERVICE UPON NON-RESIDENT: AFFIDAVIT. Service of summons upon a non-resident defendant can only be made in cases where service might be made by publication, and the fail-

ure to file the affidavit required before service by publication is as fatal as a jurisdictional defect with respect to personal service upon a non-resident as with respect to service by publication. Overruling a conflicting holding in *Cheney v. Harding*, 21 Neb. 68.

2. **Mortgagees in Possession**: Default. Facts considered, and *held* not to show that defendants are entitled to protection as mortgagees in possession after default under the provisions contained in the mortgage.

3. **Realty**: Right of Possession: Infants: Estoppel. Where the subject-matter in dispute is the present right of possession of real property, there is no estoppel established as against plaintiffs by merely showing that during their minority their guardian received a portion of the purchase price paid for said property by the defendant and used it for the maintenance and education of such minors.

Error from the district court of Douglas county. Tried below before Hopewell, J. *Reversed.*

*L. D. Holmes*, for plaintiffs in error.

*John D. Howe* and *J. J. O'Connor*, contra.

Ryan, C.

This was an action for the possession of certain real property in Omaha. The answer consisted of a general denial, coupled with an averment of lawful possession and a plea of the statute of limitations. There was a reply, by which issues were joined on the averments of the answer. From the facts which shall be hereinafter stated it will be evident that the limitation invoked cannot be available, unless the defendants have established successfully certain propositions which would render unnecessary an appeal to that statute. The assertion that the defendants are in rightful possession adds nothing to the issue made up by the general denial which precedes it. This must therefore be treated as an action in which plaintiffs asserted and sought to recover possession, alleged to be wrongfully detained by defendants, who insisted that their possession was rightful,

In argument, counsel have discussed various matters as though in the answer a proper foundation had been laid, and a proper appeal made, for equitable relief. This view of the situation we are precluded by the issues from taking into consideration. (*Franklin v. Kelly*, 2 Neb. 79; *Stalcy v. Housel*, 35 Neb. 165; *Wanser v. Lucas*, 44 Neb. 759.)

There was a trial to the court, which resulted in a judgment in favor of the defendants, and plaintiffs have prosecuted error proceedings to this court. On the trial it was stipulated that one of the plaintiffs, Joseph Merville, who brought his action by his next friend, was sixteen years of age on July 1, 1894. On May 19, 1894, the testimony of the other plaintiff was taken by deposition, and, at that time, she testified that she was twenty-three years of age. Such transactions, therefore, as took place in 1882 happened while one plaintiff was eleven years of age and the other was but four. There were findings of fact on the trial, and as these give a history of transactions involved they are reproduced in the language of the record, as follows:

"John Merville, in his lifetime, purchased the property in controversy from John A. Creighton, one of the defendants, on or about the 21st day of March, 1882, paying therefor the sum of two thousand eight hundred ($2,800) dollars; one thousand dollars of said sum being secured by a purchase price mortgage on said real estate in favor of defendant Creighton, and on or about the 9th day of August, 1882, said Merville borrowed from said defendant John A. Creighton one thousand ($1,000) dollars, giving a second mortgage on said real estate to secure the same. Shortly after, and on the 1st day of September, 1882, said John Merville died, leaving his wife and two small children occupying said real estate as their homestead. On the 29th day of September, 1882, Peter J. Creedon, on the application of said Frances Merville, the widow of said deceased, was duly appointed administrator of the estate of said deceased by the county

court of this county, and qualified and accepted said trust. The widow of said deceased employed J. P. English, an attorney at law, to look after and protect the interest of herself and two small children in her deceased husband's estate, and secure a speedy settlement of the same; the said estate consisting of said land subject to said mortgages, and a small amount of personal property, to the end that they might return to the state of New York, whence they had recently come, and where their friends resided. About said time, and prior to the commencement of the suit to foreclose herein mentioned, said Frances Merville removed with her two children, the plaintiffs herein, to Albany, New York, and on or about January 5, 1885, said Frances was duly appointed guardian of her minor children, Joseph and Claudia, the plaintiffs, by the surrogate court of Albany county, New York, and duly qualified and assumed the duties of such guardian. Prior to said appointment and after said widow, Frances Merville, and plaintiffs resumed their residence in New York, she was, under the laws of that state, given power to act for her said children and employ an attorney at law in their behalf substantially as was done by her as herein found. John A. Creighton commenced foreclosure proceedings on his said two mortgages at the instance and request of said James P. English, attorney for said widow and children, to settle the estate. A summons was duly served on P. J. Creedon, administrator, in Douglas county, Nebraska, and summons was issued to the sheriff of this county, who deputized the sheriff of said Albany county, New York, to serve the same in New York, and the said summons was served upon said Frances Merville and Claudia and Joseph Merville (the plaintiffs) in said foreclosure proceedings, and due return made thereof. Said Frances Merville, after the same had been served on herself and children, sent the several copies of the summons that were so served to J. P. English, said attorney, and authorized him, in her own behalf and in behalf of said plain-

tiffs, to protect and defend the interest of said plaintiffs and herself in said suit, and said J. P. English did look after and attend to said foreclosure suit, and appeared in said suit in behalf of the plaintiffs and participated therein, but such appearance was not in writing, except the appearance and answer as guardian *ad litem* for these plaintiffs; and also by appearing at the sheriff's sale and bidding on said property in the interest of said minors and widow. Said John A. Creighton purchased said real estate at said sale in said foreclosure suit for its full value, paying therefor the sum of five thousand ($5,000) dollars. He entered into peaceful possession of said property, receiving a sheriff's deed therefor, and has remained in possession since the 7th day of August, 1884, and has paid a large sum of money for taxes, general and special, to-wit, $2,500 and upwards, levied on said real estate. The residue of the proceeds of said sale, after paying the costs and mortgaged indebtedness aforesaid, to-wit, $2,537.16, was paid into this court in said case, and upon the order thereof paid to the administrator of the estate of said John Merville, deceased, and by him accounted for to said county court, and the residue upon final settlement was paid by him under a decree of distribution of the county court of Douglas county, one-third, to-wit, $773.95⅓, to Frances Merville, and one-third, to-wit, $773.95⅓, to each of the plaintiffs by paying the same to their legally appointed guardian, who filed in said county court a duly executed receipt as guardian, and the same was used for the support and maintenance of said minors; and said administrator's account was duly allowed and the administrator discharged. John A. Creighton, in said foreclosure suit, did not make, or cause to be filed, an affidavit showing that the plaintiffs Claudia and Joseph Merville were non-residents of the state of Nebraska, and that summons could not be served upon them within the state of Nebraska, previous to suing out the summons which was served upon the plaintiffs; and for that reason the court

.finds that the district court of Douglas county did not have jurisdiction of the plaintiffs Claudia Rowe and Joseph Merville in the suit brought by said John A. Creighton for the purpose of foreclosing his said mortgages, and that the proceedings thereunder, as to the plaintiffs in this suit, is void and of no force or effect. To which finding defendants except. The court finds that the widow, Frances Merville, died December 6, 1893. The court further finds that the plaintiffs have not tendered to said Creighton any sum whatever, or offered to pay him any sum whatever, either before or since the commencement of this suit. The court finds that the said defendant Creighton is entitled to the possession of said real estate. The court further finds that the plaintiffs are estopped to maintain this action. It is therefore considered by the court that the defendants go hence without day, and recover their costs herein expended and taxed at ——, and that execution is awarded therefor."

In these findings there is one that the foreclosure proceedings upon which the title of the defendants is founded was void and of no effect. The facts detailed show with sufficient clearness the respect in which there was a failure to acquire jurisdiction of the guardian of the two minors who are now plaintiffs. The personal service in another state is but a substitute for service by publication. (*Anheuser-Busch Brewing Ass'n v. Peterson,* 41 Neb. 897.) The property to be affected was situated within this state, and it was competent for the legislature to provide upon proof of what facts courts of this state might entertain the presumption that the owner of such property is bound to know of the pendency of proceedings affecting his rights therein. By sections 77 and 78, Code of Civil Procedure, it is required as a jurisdictional prerequisite that an affidavit be filed disclosing such conditions that the court has power to enter a judgment or decree *in rem.* When this has been done publication of the notice of the pendency of the action may

be made under the provisions of section 79 of the Code of Civil Procedure, or, under the authority of section 81, personal service may be made upon the defendant in another state. Without the affidavit the jurisdiction of the court is not invoked, though the publication may be in strict compliance with the requirements of the statute, and this stringent rule is recognized in several cases passed upon by this court. (*Atkins v. Atkins*, 9 Neb. 191; *Fulton v. Levy*, 21 Neb. 478; *Holmes v. Holmes*, 15 Neb. 615; *McGavock v. Pollock*, 13 Neb. 535; *Bantley v. Finley*, 43 Neb. 794.) As personal service on a non-resident defendant is but a substitute for service by publication, the filing of an affidavit is as necessary to jurisdiction in the one case as in the other. In *Cheney v. Harding*, 21 Neb. 68, it was held that if it appeared from the record that the defendant was a non-resident at the time of personal service upon him, the court would acquire jurisdiction, though no affidavit whatever had been filed. We can see no reason for holding that service by publication is effective only upon the condition that previous thereto the statutory affidavit has been filed and yet that a mere substitute for that service may be good without any affidavit whatever, and accordingly to this extent the holding in *Cheney v. Harding, supra*, is overruled. It follows from the views just expressed that if the district court had no jurisdiction it could not appoint a guardian *ad litem* for the minor defendants. It is urged, however, that the foreclosure proceedings were begun and carried on at the instance of the guardian of these minors and that part of its fruits were expended for their benefit. As already stated, this action is one for the possession of certain real property, and only considerations pertinent to that right are proper and relevant. The correct mode of obtaining a sale of real property of a decedent, either for the payment of his debts or for the benefit of his children, is pointed out by our statute, and it would be a dangerous practice to permit innovations of the character herein attempted to be justified, even though

convinced, as we certainly are, that the foreclosure proceedings under consideration were begun in good faith
and at the request of the guardian and, as she believed,
for the advantage of her children.

It is, however, insisted that the defendant Creighton
should at least be deemed a mortgagee in possession
after default, and that under such circumstances he cannot be ejected without tender of the debt. Let us consider whether or not there had been a default when
Creighton's possession began. One of the notes secured
by the mortgage was of date March 28, 1882. The other
was of date August 9, 1882. Each was for $1,000, due
five years after date,—one bearing interest at seven per
cent per annum until paid, the other at eight per cent
per annum until paid. There was no undertaking that
interest would be paid annually or at any other time before the principal fell due. The right reserved in the
mortgage to take possession was expressly conditioned
upon the failure to make any of the payments required,
or upon forfeiture of the mortgage. The sole default
pleaded as the ground for foreclosure before the maturity
of the notes was that the interest had not been paid on
March 28, 1883, on one note, and on August 9, 1883, on
the other. As these payments had not been stipulated to
be so made, the failure to make them did not constitute
a default on the part of the mortgagors. The rule contended for by defendants herein need not, therefore, be
discussed, for under the facts they could not be within its
protection.

It seems, however, that the district court found that
the minors were estopped to prosecute this action without first tendering the amount which they had received
the benefit of through the foreclosure. If this was an
action for the recovery of the money paid, we can imagine that it might be proper for Mr. Creighton to allege
and show that the money had been used in the purchase
of necessaries, and that under such circumstances a court
might refuse to recognize the defense of infancy. But

we are not dealing with such a case. Mr. Creighton began the foreclosure proceedings at the instance of Mrs. Merville. The children had not, and in the nature of things could not have had, any part in the institution of these proceedings. They were carried on until, as defendants now claim, Creighton was vested with title. His right of possession now depends upon the validity of that title, and his title and right of possession are the only questions which can be considered in this action. It is clear upon a moment's reflection that these minors could not be estopped to set up the failure to divest their title by defendant's showing merely that certain money used by their guardian for their benefit had been received by such guardian through the foreclosure proceedings. In the first place, this did not show any conduct of the minors which misled Creighton into foreclosing and attempting thereby to acquire title. In the second place, there was no evidence that they ever knew whence this money was derived. There was, therefore, no estoppel which could operate to create or strengthen Creighton's right to maintain possession, and that right is the sole question involved in this case. We realize that courts, in protecting the rights of helpless infants, are compelled to enforce rules which often operate harshly, and among all the cases of this kind that have come under our observation there has been none which more strongly appealed to our sympathies than does the one at bar. But the same considerations which inspired the opinions in *Meyers v. McGavock*, 39 Neb. 843, *Englebert v. Troxell*, 40 Neb. 195, and others which might be cited, are still imperative, and it is only in obedience to what we conceive to be our duty that we direct that the judgment of the district court be reversed and the cause be remanded for further proceedings.

REVERSED AND REMANDED.