MARY ALBERS ET AL., APPELLANTS, v. JOSEPH KOZELUH ET AL., APPELLEES.*

FILED APRIL 9, 1903. No. 12,732,

1. **Affidavit: CONSTRUCTIVE SERVICE.** An affidavit which contains no venue and which also fails to disclose the county of which the

---

* Rehearing allowed. See opinion, p. 529, *post.*

officer before whom it was taken is an official, is so fatally de-
fective as to be worthless as a basis for the publication of a sum-
mons on a nonresident defendant.

2. **Sheriff's Deed:** NOTICE OF JURISDICTIONAL DEFECT. Where a sheriff's
deed forms one of the links in a chain of title, the party claiming
thereunder is charged with notice of any jurisdictional defect in
the proceedings which the record in the case from which the deed
emanated shows; and if the record discloses on its face that the
court had no jurisdiction to enter the decree in the execution of
which the deed was made, he can not claim to be a *bona fide*
purchaser of the land.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, DISTRICT JUDGE. *Reversed.*

*Willard E. Stewart,* for appellants.

*Arthur W. Lane, Fayette I. Foss, Ben V. Kohout* and *R.
D. Brown, contra.*

DUFFIE, C.

About the year 1871 Henry Stately made homestead
entry of the east half of the southwest quarter of section
22, township 7 north, range 5 east of the 6th P. M. in
Lancaster county, Nebraska. He received a patent there-
for January 20, 1876. He occupied this land as a home-
stead until some time in 1880, when, his wife becoming
insane and an inmate of the asylum for the insane at
Lincoln, he found homes for his infant children—the old-
est being then about eleven years of age—and went to
Colorado for the avowed purpose of earning money to
pay an incumbrance upon the land of $250, existing in
the form of a mortgage made January 8, 1877, to the New
England Mortgage Security Company, and to earn means
to support and provide for his family, which he hoped to
reunite at a future date. Some time after going to Colo-
rado he died, and one J. C. Crooker, residing in the city of
Lincoln and claiming to be the assignee of the mortgage
made to the New England Mortgage Security Company,

in January, 1886, brought an action to foreclose the same, obtained a decree of foreclosure, and in May, 1886, said land was sold under the decree and bid in by said Crooker, who afterwards sold the same to one Patterson, who thereafter sold and conveyed the same to the appellee Joseph Kozeluh.

James F. Lansing, a real estate and loan agent residing in the city of Lincoln, testified upon the trial, and his evidence was not contradicted, that he was doing business for the Corbin Banking Company of New York, which company was in some manner connected with the New England Mortgage Security Company, and apparently had charge of its collections, and that in the year 1882, Crooker & Gregory, claiming to act as attorneys for Henry Stately, paid in the amount due upon the Stately mortgage, which he forwarded to the Corbin Banking Company, and shortly thereafter received a release of said mortgage from the New England Mortgage Security Company, which he delivered to said Crooker & Gregory.

This action was brought by the children of said Stately, and by Royal L. Stewart, guardian of Dora Stately, his insane wife, to have the sheriff's deed made to Crooker and the subsequent conveyances of said land, canceled and set aside, and for the rental value of said premises during its occupation by the defendant.

It is first claimed that the mortgage was satisfied and discharged prior to the institution of foreclosure proceedings by J. C. Crooker. The evidence, to our mind, is quite conclusive that such is the case, but this can not avail the plaintiffs at this time. In his petition for a foreclosure Crooker alleged that he was the assignee of said mortgage, and the district court so found. If the court had jurisdiction to entertain and try the action this finding is conclusive, and can not be questioned in this action.

It is further urged that the district court had no jurisdiction to try and determine the foreclosure action, and this because no personal service was had upon the defendant

Henry Stately, and no sufficient affidavit for service by publication was made and filed in the case. The affidavit is in the following form:

"In the District Court of Lancaster County, Nebraska.

"JABEZ C. CROOKER, Plaintiff,

        v.

HENRY STATELY, DORA STATELY and    } Affidavit.

  L. B. BRONSON, Defendants.

"Jabez C. Crooker, plaintiff in the above entitled action, being first duly sworn, deposes and says, that on the —— day of January, A. D. 1886, he filed a petition in the district court of Lancaster county, Nebraska, against Henry Stately, Dora Stately and L. B. Bronson, the object and prayer of which is to foreclose a certain mortgage executed by the defendant to the New England Mortgage Security Company (and duly assigned to said plaintiff) upon the east half ($\frac{1}{2}$) of the southwest quarter of section 22, town 7 north, range 5 east, in Lancaster county, Nebraska, to secure the payment of a note and coupon, dated December 23, 1876, for the sum of $250 upon the note, and $18.20 upon coupon, due and payable December 23, 1881; that there is now due upon said note, coupon and mortgage, the sum of $374 and $37 attorney fees, and plaintiff prays that said premises may be decreed to be sold to satisfy the amount due thereon.

"Affiant further states that defendant, Henry Stately, is a nonresident of the state of Nebraska, and service of summons can not be made within this state upon him.

"Wherefore plaintiff prays service upon said defendant by publication.                      J. C. CROOKER.

"Subscribed in my presence and sworn to before me this 6th day of January, 1886.         J. H. BROWN,
                                 *"Justice of the Peace."*

Objection is made to this affidavit because it does not state any facts showing the absence of the defendant from the state of Nebraska at the time it was filed. It does recite

that Staley "is a nonresident of the state of Nebraska, and service of summons can not be made within this state upon him." An affidavit similar in this respect was held sufficient in *Shedenhelm v. Shedenhelm*, 21 Neb. 387.

It is further urged that the affidavit is fatally defective for want of venue. It will be observed that the affidavit does not disclose where it was made, or the county of which the justice before whom the same was executed was an officer. The authorities are conflicting as to the effect of a failure of an affidavit to disclose the venue where made. In New York and some other jurisdictions such failure is held fatal, while in Illinois and some other states it is said that the presumption will obtain that the affidavit was made in the proper county, and that the officer taking the same had jurisdiction to administer the oath. Our own decisions upon the question are not clear and satisfactory.

In *Crowell v. Johnson*, 2 Neb. 146, the affidavit was held sufficient, the court saying (p. 153) : "The affidavit was sworn to before the clerk of the court in which the action was pending; and it will be presumed that the clerk administered the oath in the proper county."

In *Merriam v. Coffee*, 16 Neb. 450, where objection was made to the affidavit of an assessor, it is said (p. 451) : "The first objection is, that there is no venue to the oaths of the assessors which were attached to the assessment rolls, nothing to show in what county or state they were administered. An examination of the record shows that the oath for the year 1870 was taken before the deputy clerk of Cass county, and filed in the office of the county clerk. The presumption in such case is that the oath was administered within the jurisdiction of the officer."

These cases are to the effect that where they show on their face that they were taken before an officer of the county where filed, the presumption obtains that they were made in that county.

In *Blair v. West Point Mfg. Co.*, 7 Neb. 146, 152, where objection was made to an affidavit of service of a summons,

the court said: "Objection that the affidavit of service of the summons has no venue, is well taken. An affidavit should show upon its face that it was taken within the officer's jurisdiction."

In this case it is not disclosed whether the officer before whom the affidavit was made was an officer of the county where the same was filed, but the presumption must obtain that such was not the case, or at least that the affidavit did not disclose such to be the case, else the court would have felt bound by its former holding in *Crowell v. Johnson, supra.*

In *Byrd v. Cochran,* 39 Neb. 109, the court quotes with approval the language of Judge MAXWELL in *Blair v. West Point Mfg. Co., supra,* and cites in support thereof cases from the courts of New York, in which state the doctrine is firmly established that an affidavit of the character of the one under consideration is a nullity. *Thompson v. Burhans,* 61 N. Y. 52; *Lane v. Morse,* 6 How. Pr. (N. Y.) 394.

In the light of these decisions, we think that this court has unmistakably committed itself to the New York doctrine that the affidavit must show upon its face the proper venue, or must disclose that the officer before whom it was executed was an officer of the county where the same was filed. We conclude, therefore, that the affidavit for service by publication was fatally defective; that no legal service by publication could be made thereunder; and that the court had no jurisdiction to entertain and try the fore-closure proceedings.

It is earnestly insisted by the defendant that this is a collateral attack upon the foreclosure decree, and that the jurisdiction of the court to enter the decree will be conclusively presumed, and that neither the sufficiency of the notice or affidavit can be questioned or reviewed collaterally. We do not think that this position is tenable. The affidavit is jurisdictional to service by publication, and where there is no affidavit or where the affidavit is fatally defective the publication is void. *Atkins v. Atkins,* 9 Neb.

191; *McGavock v. Pollack,* 13 Neb. 535; *Rowe v. Griffiths,* 57 Neb. 488.

The plaintiff is not seeking to attack the decree in this case because of irregularities, but the claim is that the judgment is absolutely void; that what appears on its face as a judgment is not one, because of want of jurisdiction by the court to enter it.

In *Chicago, B. & Q. R. Co. v. Hitchcock County,* 60 Neb. 722, it is said: "In courts of general jurisdiction, the rule is that the proceedings taken, including questions of jurisdiction, are presumed to be regular and in conformity with law. Where, however, the record discloses the jurisdictional steps taken, and it is made to appear that no jurisdiction was acquired over the defendant, the rule invoked is rendered unavailing. Where a court is without jurisdiction over a defendant, the judgment rendered is void, and may be attacked as such by any one whose rights are affected by its rendition, and its invalidity shown in any action in which it may be called in question."

The decree entered in this case and the sheriff's deed based thereon, is a link in the chain of the defendant's title. All persons claiming an interest in real estate, are bound to take notice of the recitals of all duly recorded deeds in their grantor's chain of title. *Hubbard v. Knight,* 52 Neb. 400, 401. And this is true of all jurisdictional steps leading up to a transfer by judicial sale. Where a judicial sale forms one of the links in the chain of title under which a grantee claims, he is charged with notice of any fact showing want of jurisdiction in the court making or ordering the sale. *Chambers v. Jones,* 72 Ill. 275; *Stegall v. Huff,* 54 Tex. 193; *Nelson v. Allen,* 1 Yerg. (Tenn.) 360; Wade, Notice, sec. 327. A void judgment, the record in the case showing its invalidity, is certainly no better authority for making a sale than is a valid judgment which has been paid and satisfied, and numerous cases are to be found holding that in such cases the sale is absolutely void and that no one can obtain any rights under such a sale. *Hunter v. Stevenson,* 1 Hill (S. Car.)

*415; *Weston v. Clark,* 37 Mo. 568; *Laval v. Rowley,* 17 Ind, 36; *King v. Goodwin,* 16 Mass. 63; *Wood v. Colvin,* 2 Hill (N. Y.) 566.

The claim made by the defendant that he is a *bona fide* purchaser of this land without notice of any defect in his title, is disproved by record defects appearing in the very chain of title under which he claims. There could be no *bona fide* purchaser of this land claiming through the sheriff's deed made by order of a court without jurisdiction to try the case in which the order was made.

We recommend a reversal of the decree of the district court, and that the case be remanded with directions to enter a decree in favor of the appellants.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the case remanded with directions to enter a decree in favor of the appellants.

REVERSED AND REMANDED.

The following opinion on rehearing was filed December 2, 1903. *Judgment of reversal adhered to:*

1. **Affidavit for Constructive Service:** JURISDICTION. An affidavit for service of summons by publication, which contains no venue, and does not disclose the county of which the official before whom it purports to have been sworn is an officer, is void on its face, and confers no jurisdiction on the court to render a decree of foreclosure against nonresident defendants.

2. **Extrinsic Evidence.** Such void affidavit can not be cured or made valid by restoring to extrinsic evidence, when the validity of the decree rendered thereon is assailed.

3. **Statute of Limitations:** ADVERSE POSSESSION: MINORS. The statute of limitations, as to adverse possession, does not run against persons while under disability, such as minors; and an action brought to recover an interest in real estate within ten years after they arrive at the age of majority, is commenced in time.

4. **Former** judgment in this case adhered to.

BARNES, C.

This is a rehearing of the case of *Albers v. Kozeluh,* *ante,* p. 522. The original opinion was written by Commis-

sioner DUFFIE, and contains a full and complete statement of the facts. It is sufficient for us to state that the action was brought by the children of one Stately, and by Royal L. Stewart, as guardian of Dora Stately, his insane wife, to have the sheriff's deed made to one Crooker, and the subsequent conveyances of the land in question, canceled and set aside, and to recover its rental value during its occupation by the defendant. Our former opinion reverses the judgment of the trial court, and this rehearing appears to have been allowed for the purpose of again considering two questions: First, as to whether or not the judgment, on which the sheriff's deed above mentioned was based, was void; second, the further consideration of the question of adverse possession. It may be stated at the outset that the only service of summons in the foreclosure action on which the sheriff's deed to Crooker was based, was by publication, and it appears beyond question that the affidavit for such service did not contain any venue. That there may be no question about this we again quote it:

"In the District Court of Lancaster County, Nebraska.

"JABEZ C. CROOKER, Plaintiff,
v.
HENRY STATELY, DORA STATELY and
L. B. BRONSON, Defendants.
} Affidavit.

"Jabez C. Crooker, plaintiff in the above entitled action, being first duly sworn, deposes and says, that on the —— day of January, A. D. 1886, he filed a petition in the district court of Lancaster county, Nebraska, against Henry Stately, Dora Stately and L. B. Bronson, the object and prayer of which is to foreclose a certain mortgage executed by the defendant to the New England Mortgage Security Company (and duly assigned to said plaintiff) upon the east half ($\frac{1}{2}$) of the southwest quarter of section 22, town 7 north, range 5 east, in Lancaster county, Nebraska, to secure the payment of a note and coupon, dated December 23, 1876, for the sum of $250 upon the note, and $18.20

upon coupon, due and payable December 23, 1881; that there is now due upon said note, coupon and mortgage, the sum of $374 and $37 attorney fees, and plaintiff prays that said premises may be decreed to be sold to satisfy the amount due thereon.

"Affiant further states that defendant, Henry Stately, is a nonresident of the state of Nebraska, and service of summons can not be made within this state upon him.

"Wherefore plaintiff prays service upon said defendant by publication.                    J. C. CROOKER.

"Subscribed in my presence and sworn to before me this 6th day of January, 1886.                    J. H. BROWN,
                                   *"Justice of the Peace."*

That such an affidavit is void, and confers no jurisdiction on the court to take any action in a foreclosure proceeding, has been frequently decided by this and other courts. The exact question first came before this court in *Blair v. West Point Mfg. Co.* 7 Neb. 146. In that case the affidavit, like the one above quoted, was without venue. Judge MAXWELL, speaking for the court, said: "It is clearly shown by the record that the defendants in the court below were nonresidents of this state. It also appears that the case is one that falls within the fourth subdivision of section 77 of the Code of Civil Procedure, in which service may be made by publication, or by personal service of summons out of the state. But before service can be made by publication, or by personal service of summons out of the state, an affidavit must be filed setting forth that service of summons can not be made within the state on the defendant or defendants to be served, and that the case is one of those mentioned in section 77. No affidavit was filed in this case, therefore there was no valid service of the summons. *Fiske v. Anderson,* 33 Barb. (N. Y.) 71, 75; *Litchfield v. Burwell,* 5 How. Pr. (N. Y.) 341; 1 Code Rep. (N. S.) 41; *Morrell v. Kimball,* 4 Abb. Pr. (N. Y.) 352. The objection, that the affidavit of the service of the summons has no venue, is well taken. An

affidavit should show, upon its face, that it was taken within the officer's jurisdiction. The motion to quash, therefore, should have been sustained." It was held by the court that the decree based upon the affidavit without venue was absolutely void. The question came up again in *Byrd v. Cochran,* 39 Neb. 109. In that case the question of the validity of a mechanic's lien was involved, and the court again stated, following *Blair v. West Point Mfg. Co., supra,* that the affidavit should show on its face that it was taken within the officer's jurisdiction; and cited in support of this ruling *Davis v. Rich,* 2 How. Pr. (N. Y.) 86; *Sandland v. Adams,* 2 How. Pr. (N. Y.) 127; *Snyder v. Olmsted,* 2 How. Pr. (N. Y.) 181. The rule is firmly established in New York that an affidavit of the character of the one under consideration in this case is a nullity. *Thompson v. Burhans,* 61 N. Y. 52; *Lane v. Morse,* 6 How. Pr. (N. Y.) 394. That the affidavit for service of summons by publication is jurisdictional, and where there is no affidavit or where the affidavit is fatally defective the publication is void, has been frequently held by this court. *Atkins v. Atkins,* 9 Neb. 191; *McGavock v. Pollack,* 13 Neb. 535; *Rowe v. Griffiths,* 57 Neb. 488.

A careful examination of all of the cases shows that we are unmistakably committed to the rule that the affidavit must show upon its face the proper venue, or must disclose that the officer before whom it was executed was an officer of the county where the same was filed. The affidavit in question herein does neither, and, unless we adhere to our former opinion, we must overrule all of the cases heretofore decided by us involving this question, and establish another and different rule. This we are not inclined to do. The rule has existed in this state so long that it may be said to be a rule of property. The law on this question has become fixed and certain, and it ought to be allowed to remain certain, even if in some cases it seems to work a hardship. The rule that we are asked to adopt is uncertain, and the decision of each case would be subject to the effect of such extrinsic evidence and facts

as the party desiring to support a judgment, void upon its face, might be able to produce. It is impossible to forecast the amount of mischief which might be caused by the adoption of such a rule. Again, the cases upon which we are asked to overrule our former decisions are none of them exactly in point, but all turn upon some other proposition. It is claimed, however, that we may resort to the title of the case to supply the missing venue. This we can not do, for the title always states the name of the county in which the action is brought, while the affidavit may be sworn to in any other county, or even in another state, while the venue is always laid in the county where the affidavit is in fact sworn to. It is further contended that we may go to the petition to supply the necessary facts. This can not be done, for it appears that the petition was sworn to and filed in the latter part of one year; while the so called affidavit was not made and filed until the fore part of the next year. The rule which we have established is not a harsh or unjust one. A person claiming an interest in real estate under judicial proceedings, which, of course, are a matter of record, is bound to take notice of all that the record discloses. He is charged with notice of any fact showing want of jurisdiction in the court to render the judgment, or make the order under which he claims title. Therefore he can not be said to be an innocent purchaser, or entitled to the protection of the court as such.

Lastly, it is claimed that we should recede from our former judgment, for the reason that the question of adverse possession was not considered therein. An examination of the record discloses that at the time the foreclosure proceedings were had on which the sheriff's deed in question is based, Stately's wife was an inmate of the insane asylum, and his children were all minors. It further appears that the oldest child did not reach the age of majority until some time in the year 1888, and, of course, the others became of age, in turn, much later. This action was commenced in the latter part of 1897, and ten years had not elapsed after the statute of limitations began to

run and before it was commenced. Therefore the action was begun in time. It may be further stated that limitation as to adverse possession did not begin to run while the plaintiffs were minors. This would seem to be sufficient to dispose of this question.

A careful review of the case convinces us that our former judgment was right, and we therefore recommend that it be adhered to.

GLANVILLE and ALBERT, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the former judgment is adhered to.

JUDGMENT OF REVERSAL ADHERED TO.