## BUXTON v. PENNSYLVANIA LUMBER CO.

(District Court, N. D. of California. July 14, 1914.)

1. CORPORATIONS ⬅️442—CONVEYANCE OF PROPERTY—VALIDITY OF DEED.

Provisions of a state statute, requiring the consent of stockholders to the conveyance of real property of a corporation and the filing of such consent in the county where the corporation has its principal place of business, are for the protection of stockholders, and they alone can take advantage of a failure to comply with them. Where such consent was given in writing, a failure to file the same does not invalidate a deed executed pursuant thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1782; Dec. Dig. ⬅️442.]

2. FRAUDULENT CONVEYANCES ⬅️295—EVIDENCE TO ESTABLISH FRAUD—SUFFICIENCY.

Evidence considered, and *held* insufficient to invalidate deeds to lands made by a corporation, on the ground that they were made to hinder, delay, or defraud its creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. ⬅️295.]

3. EXECUTION ⬅️264—SALE—TITLE AND RIGHTS OF PURCHASER.

A purchaser of land at execution sale takes no more than the judgment debtor's right and estate at the time of the sale, and assumes the risk of any defects in the debtor's title, whether he bought with or without notice.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 747–758; Dec. Dig. ⬅️264.]

4. EXECUTION ⬅️272—SALE—RIGHTS OF PURCHASER FROM EXECUTION PURCHASER—"BONA FIDE PURCHASER."

A purchaser of land from an execution purchaser is bound to know any defects in the records on which the execution rests, and is not protected as a "bona fide purchaser" without notice.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 771, 781–788; Dec. Dig. ⬅️272.

For other definitions, see Words and Phrases, First and Second Series, Bona Fide Purchaser.]

5. EXECUTION ⬅️275—SALE—RIGHTS OF PURCHASER—VOID JUDGMENT.

A sale made under an execution issued on a void judgment is also void, and conveys no right.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 16, 148, 345, 791–796; Dec. Dig. ⬅️275.]

6. REMOVAL OF CAUSES ⬅️114—PROCEEDINGS AFTER REMOVAL—JURISDICTION ACQUIRED BY FEDERAL COURT.

On removal of a cause the federal court has the same jurisdiction to modify or set aside orders or rulings previously made therein that the state court would have had, if the cause had not been removed.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 241–244; Dec. Dig. ⬅️114.]

7. REMOVAL OF CAUSES ⬅️95—TRANSFER OF JURISDICTION AND EFFECT OF REMOVAL—VALIDITY OF SUBSEQUENT PROCEEDINGS IN STATE COURT.

The right of removal is given by federal statute and is therefore a federal question, to be determined by the federal courts, and is in no wise dependent on the action of the state court. The filing of a proper petition and bond for removal, followed by the lodging of a transcript of the record in the federal court, effects a removal, which deprives the state court of jurisdiction to proceed further in the cause, and, unless re-

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

manded, any judgment it may thereafter render therein is a nullity, and can be the foundation of no property rights.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 204, 205; Dec. Dig. ☞95.]

In Equity. Suit by A. L. D. Buxton against the Pennsylvania Lumber Company. Decree for complainant.

W. F. Williamson, of San Francisco, Cal., for plaintiff.

Garoutte & Goodwin, of San Francisco, for defendant.

Charles A. Shurtleff and Robert B. Gaylord, both of San Francisco, Cal., amici curiæ.

FARRINGTON, District Judge. This is a suit to quiet title to a tract of land in Lassen county, Cal., originally owned by the Associated Colonies, a New York corporation. At a time when its title was undisputed, two deeds, dated June 3, 1898, and April 24, 1899, respectively, were executed by that corporation to the plaintiff, A. L. D. Buxton. The deeds contained a description of, and purported to convey, not only the tract in dispute, but all the property and assets of the granting corporation. The deeds were recorded May 16, 1900, and are good, unless set aside or canceled. Defendant contends that this result was accomplished by two judgments rendered in the superior court of Lassen county, Cal., in favor of one Frank P. Cady, and that thereafter the land was purchased at sheriff's sale by one of its predecessors. Plaintiff replies that the two judgments were set aside and canceled in the Circuit Court of the United States for the Northern District of California after the causes had been duly removed to that tribunal, and before defendant received the sheriff's deed.

In the state court Cady brought suit against the Associated Colonies February 5, 1902. Summons was served on the Secretary of State at Sacramento on the 27th day of the same month. The Associated Colonies, having deeded all its prpoerty and assets in California to Buxton, had no designated agent in the state upon whom service of summons could be had. April 3, 1902, a default judgment was entered against the Associated Colonies for the sum of $6,945 and costs, assessed at $11. Before the land deeded to Buxton in 1898 and 1899 could be subjected to the lien of this judgment, it was necessary to set aside the conveyances to Buxton. Accordingly, six days later, on April 9, 1902, Cady began a second suit to cancel said deeds, and to have it adjudged that the Associated Colonies owned said land, and that the same was subject to the lien of the judgment obtained April 3d. In the latter suit, Buxton and the Associated Colonies were joined as defendants. April 12, 1902, summons was attempted to be served on the Secretary of State. April 14th personal service was had on Buxton in Lassen county. May 13, 1902, Buxton and the Associated Colonies filed in the second Cady suit a petition for removal to the Circuit Court of the United States for the Northern District of California. The cause was removed. On the same day default of the Associated Colonies was entered in the state court, and on the 30th day of July, 1902, said court, notwithstanding the removal proceedings, adjudged and decreed that both deeds to Buxton be annulled, canceled, and set aside, in

so far as they affected certain lands, including the tract here in question, that the Associated Colonies was the owner of the lands, and that the same were subject to the lien of Cady's first judgment for $6,945 and costs. On the next day, July 31, 1902, execution issued on the judgment in the first Cady suit. On the 22d day of the following month the land in question was sold by the sheriff at public auction for $3,500 to W. D. Minckler, who immediately received a certificate of sale, a duplicate of which was recorded by him September 4, 1902.

September 20, 1902, the Associated Colonies appeared specially in the state court in the first Cady suit, and filed a motion to quash the service of summons, and also a petition to remove said cause to the Circuit Court of the United States for the Northern District of California. The "cause was thereupon removed to said Circuit Court." October 11, 1902, W. D. Minckler, who had bought the land in question at sheriff's sale August 22d, assigned his certificate of sale to one D. G. Curtis. October 20, 1902, Cady appeared in the federal court and moved that both Cady suits be remanded. November 7, 1902, the federal court in the first Cady suit "duly gave, made, and entered its order and judgment therein," denying Cady's motion to remand, granted defendant's motion to quash service of summons, recalled the execution issued out of the state court, vacated and set aside the default of the defendant entered on the 2d day of April, vacated and set aside the judgment, and finally ordered the action dismissed. The opinion of the federal court on making these orders will be found at page 420, volume 119, of the Federal Reporter.

November 26, 1902, the Associated Colonies filed a motion in the superior court of Lassen county in the second Cady suit, to quash service of summons, to vacate the default entered May 12, 1902, and also the judgment entered July 30, 1902. January 20, 1903, said Circuit Court "duly gave and made its order and decree in said cause, denying said motion of Cady to remand said cause to said superior court, * * * granting said defendant Associated Colonies' motion to withdraw said appearance in said superior court of Lassen county, and to quash said service of summons, and to vacate and set aside said default and judgment." Final decree of dismissal in the second Cady suit was not entered in the federal court until July 7, 1905. March 16, 1903, the said D. G. Curtis assigned to the Pennsylvania Lumber Company, defendant in the present suit, his certificate of sale. October 15, 1903, the federal court made an order dismissing the second Cady suit. December 16, 1903, the sheriff of Lassen county, Cal., executed and delivered to the said Pennsylvania Lumber Company his deed to said land. July 17, 1905, the federal court entered its final decree of dismissal in the second Cady suit. No further proceedings have been had in either suit, either in the state or federal court, and no appeal has been taken from any order, judgment, or decree in either cause in either court.

[1] It is alleged by defendant that the two deeds to Buxton were signed and acknowledged by the president and secretary of the Associated Colonies, and delivered to Buxton, without authority from the stockholders or board of directors, and without consideration, for the purpose of hindering, delaying, and defrauding the creditors of that

corporation. It appears, however, from the agreed statement of fact, that the holders of more than two-thirds of the capital stock of the Associated Colonies, prior to the date of the earlier Buxton deed, had consented in writing to the execution and delivery of both deeds; but such consent was never filed or recorded in the office of the clerk of the county wherein the corporation then had its principal place of business. Such a filing is not indispensable to the validity of the deeds, nor does the statute visit the failure to file with such a penalty as the court is here asked to impose. "The consent of stockholders is the * * * essential thing. The filing is formal and subsidiary." This has been so decided by the courts of New York. Rochester Savings Bank v. Averell, 96 N. Y. 467, 475.

Furthermore, it has been held by the courts of that state that stockholders only can take advantage of the failure to comply with the statute requiring their consent to be filed. The provision was made for their protection, not for the protection of creditors. In re New York Economical Printing Co., 110 Fed. 514, 519, 49 C. C. A. 133; Market & Fulton Natl. Bank v. Jones, 7 Misc. Rep. 207, 27 N. Y. Supp. 677; Westerlund v. Black Bear Mfg. Co., 203 Fed. 599, 613, 121 C. C. A. 627.

[2] There is little evidence in support of the allegation that the Buxton deeds were executed to defraud creditors. Buxton testifies that in accepting the deeds from the Associated Colonies he had no purpose of hindering, delaying, or defrauding its creditors; that he did not at any time know that the corporation had any creditors; that he paid $4,500 for the land here in question; the remaining land described in the deeds was conveyed to him with the understanding that it should be reconveyed to such parties as the corporation might name, and that this has been done. This testimony is not contradicted. Furthermore, there is no testimony that the corporation was indebted to Cady or any one else when the Buxton deeds were executed. This disposes of the issue of fraudulent conveyance, unless fraud is established, and is res adjudicata by virtue of the judgment in the second Cady suit, entered in the superior court of Lassen county. If that judgment is void, it cannot be regarded in any sense as evidence that the Buxton deeds were fraudulent.

Conceding that the judgment and execution in the first Cady suit were regular on their face, the fact still remains that on the records of the county recorder of Lassen county the land stood in the name of Buxton, and for more than two years prior to judgment the judgment debtor had no title to the property which the sheriff offered for sale. Buxton was not a party to the first action. The sheriff had no authority to take his property in satisfaction of a judgment against the Associated Colonies. The purchaser at a sheriff's sale takes no more than the judgment debtor's right and estate at the time of the sale.

[3] "If the judgment debtor has a good title, the purchaser gets it; if a partial title, he gets that; or if no title, he gets nothing." He assumes the risk of defects in the debtor's title; and this is true, whether he purchases with or without notice. Frink v. Roe, 70 Cal. 296, 11 Pac. 820, 822; Jones v. Herrick, 35 Wash. 434, 77 Pac. 798; Pratt v.

221 F.—46

Phillips, 1 Sneed (Tenn.) 543, 60 Am. Dec. 162; Sanborn v. Kittredge, 20 Vt. 632, 50 Am. Dec. 58, 65; 3 Devlin on Deeds, § 1436; 17 Cyc. 1288.

By these facts, of which the purchaser must be deemed to have had constructive notice, he was put upon inquiry. If he made inquiry, he learned that whatever right he acquired to Buxton's land was based on the judgment in the second Cady suit, in which Buxton was a party. The purchaser was then bound to examine the record in that case, and must be charged with all which such an examination would disclose. One of the most patent facts in that record was that prior to judgment, and more than three months before sheriff's sale, defendants had filed in the state court a petition and bond for removal, and that the state court had not formally acted on this petition.. Further inquiry would have disclosed the grounds on which such removal was asked, and the fact that a copy of the record had been entered in this court. At any time within seven weeks before defendant took an assignment of the sheriff's certificate, or within ten months prior to execution of the sheriff's deed, the defendant here, the Pennsylvania Lumber Company, could have ascertained from the records of this court that both judgments in the state court had been vacated, and that this court had duly overruled Cady's motions to remand. A purchaser is bound to examine, or cause to be examined, all the documents of record constituting a part of the chain of title of those from whom he buys. The rule applies with special force to purchasers at execution sales, and to judgments, and to the proceedings under which such sales are made. Of such equities and irregularities as these disclose, the purchaser must be deemed to have had notice. 3 Freeman on Executions, § 344, p. 1970; Williamson v. Jones, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891, 921.

[4] In Waldron v. Harvey, 54 W. Va. 608, 620, 46 S. E. 603, 608, 102 Am. St. Rep. 959, 969, it is said that:

"A purchaser from a purchaser under a decree void for want of jurisdiction is not a bona fide purchaser without notice. He is bound to know the want of jurisdiction. He is bound to know defects in papers showing his claim of title." Albers v. Kozeluh, 68 Neb. 522, 94 N. W. 521, 97 N. W. 646; Wade on the Law of Notice, § 327.

If the judgment annulling the Buxton deed is void, the title to the land sold by the sheriff still remains in Buxton, notwithstanding the sale, and the defendant here took nothing. If the judgment was void, that fact was so easily ascertained by inspection of the records in the superior court of Lassen county, and in this court, as to destroy any claim on the part of this defendant that it is a bona fide purchaser without notice.

[5] "A void judgment," says Freeman, at section 20, vol. 1, of his work on Executions, "is in legal effect no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress." 1 Freeman

on Judgments (2d Ed.) § 117; Ferrier v. Deutchman, 111 Ind. 330, 12 N. E. 497; McCauley v. McCauley, 122 N. C. 288, 30 S. E. 344; Tenan v. Cain, 188 Pa. 244, 41 Atl. 594.

In passing, it is proper to observe that the judgment in the first Cady suit was rendered, execution issued, and the property sold by the sheriff before the petition for removal was filed, and before there was any jurisdiction in the federal court. Subsequently the federal court, after denying the motion to remand, on the 7th day of November, 1902, vacated and set aside the default and judgment, and recalled the execution. The authority for this is found in the fourth section of the Judiciary Act (Judicial Code [Act March 3, 1911, c. 231] § 36, 36 Stat. 1098 [Comp. St. 1913, § 1018]):

"All injunctions, orders, and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed."

By this provision the power of the federal court over orders, judgments, and other proceedings had in the state court prior to removal is fully recognized.

[6] In Bryant v. Thompson (C. C.) 27 Fed. 881, 882, it was said that the Circuit Court has the same power over orders and rulings in the state court—the same jurisdiction to modify them or set them aside—that the state court would have had if the cause had not been removed. Ex parte Fisk, 113 U. S. 713, 725, 5 Sup. Ct. 724, 28 L. Ed. 1117; Perry v. Sharpe (C. C.) 8 Fed. 15, 24; Mannington v. Hocking Valley Ry. Co. (C. C.) 183 Fed. 133, 141; Remington v. C. P. R. R. Co., 198 U. S. 95, 25 Sup. Ct. 577, 49 L. Ed. 959. If, then, by the removal proceedings the federal court acquired jurisdiction, the jurisdiction so acquired included the authority to determine whether any service of process had been had in the state court sufficient to confer jurisdiction over the defendants. Judge Morrow's decision, dismissing the cause for the reason that no valid service of summons had been had, is as binding, in the absence of further proceedings in the action, as any judgment of a Circuit Court of the United States can be. Cady v. Associated Colonies (C. C.) 119 Fed. 420.

[7] This brings us to the vital question in the case: Did removal proceedings in the superior court, followed by entry of the record here, vest this court with jurisdiction? If so, all subsequent proceedings, orders, and judgments in the state court, being without jurisdiction, are void.

We have a judgment in the state court setting aside the deeds to Buxton; we have a judgment in the federal court setting aside the judgment canceling Buxton's deeds—both rendered after removal. Neither record is before us; no attempt has been made to show that the Cady suits were not removable. Indeed, it is admitted in the agreed statement of fact that both Cady suits were removed to the Circuit Court, and that in each that court "duly gave and made its order and decree in said cause denying said motion of Cady to remand said cause to said superior court of Lassen county, Cal."

In his opinion in Cady v. Associated Colonies (C. C.) 119 Fed. 420,

Judge Morrow says the ground of removal alleged in the petition was diverse citizenship; but nowhere in the record in the present case is Cady's citizenship shown. However, there is nothing to indicate that the causes were not removable, or that they were not properly removed, save the attempted retention of jurisdiction by the state court. Furthermore, after a hearing, the federal court, by refusing to remand, decided that it had jurisdiction, while the state court apparently listened to no argument, and took no final action on the petition for removal; it simply went on with the cause.

In Ex parte Watkins, 3 Pet. 193, 207 (7 L. Ed. 650), Justice Marshall said:

"It is universally understood that the judgments of the courts of the United States, although their jurisdiction be not shown in the pleadings, are yet binding on all the world, and that this apparent want of jurisdiction can avail the party only on a writ of error."

See Dowell v. Applegate, 152 U. S. 327, 14 Sup. Ct. 611, 38 L. Ed. 463.

Defendant's position is as follows: When petition and bond for removal are filed in the state court, that court may determine for itself whether the papers on their face are sufficient and present a removable cause. In passing on this question the court acts within its jurisdiction. If it denies the petition, the remedy is to apply to the highest appellate tribunal of the state. If that court sustains the trial court, resort may be had to the Supreme Court of the United States by writ of error. This is the only procedure to reach such a decision of the state court. The Circuit Court of the United States has no jurisdiction to overrule or review the decisions of the state court as to whether or not a cause for removal is shown. In the present case no appeal from the judgment of the state court, and no writ of error to the Supreme Court of the United States, has been taken; therefore the judgments of the state court are final. The judgment of the federal court, sustaining its own jurisdiction after removal, is therefore of no effect.

This conclusion, it is urged, rests on the rule that, where two courts have concurrent jurisdiction of a cause, jurisdiction attaches to that court which first acquired jurisdiction, and there it remains until legally divested. In other words, the state court, having refused, though perhaps erroneously, to surrender jurisdiction, retains it in spite of the removal proceedings, and, inasmuch as its action has not been reversed on appeal or writ of error, it is final and conclusive, and the proceedings in the federal court are of no effect. If defendant is correct, Buxton and the Associated Colonies are in the same position they would have been, if no removal proceedings had been had, or if the motions to remand had been granted, or the decision of the federal court had been against them, and in favor of Cady.

This court is now asked to give effect to the very judgment which it has heretofore set aside. If it should be conceded that this court has no authority to review or set aside the judgment in the second Cady suit, because it was rendered subsequent to removal proceedings, and by a court of independent jurisdiction, it would not necessarily follow that this court must enforce it, whether valid or invalid. When it is

offered here as the foundation for a claim of title, if it appears to have been rendered without jurisdiction, it may be disregarded.

Judiciary Act, March 3, 1875, c. 137, § 3, 18 Stat. 470, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433, provides that, when a proper bond and petition are filed in due time in the state court, praying for removal, "it shall then be the duty of the state court to accept said petition and bond, and proceed no further in such suit." One of the conditions of the bond is that the party asking removal will enter in the federal court "on the first day of its then next session, a copy of the record in such suit." When the copy is so entered, the statute further declares that "the cause shall then proceed in the same manner as if it had been originally commenced in the said Circuit Court, and the same proceedings had been taken in said Circuit Court as shall have been had therein in said state court prior to removal." Section 6. In section 7 of the same act, it is provided that:

"If the clerk of the state court, in which any such cause shall be pending, shall refuse to any one or more of the parties or persons applying to remove the same, a copy of the record therein, after tender of legal fees for such copy, said clerk so offending shall be deemed guilty of a misdemeanor."

It is also provided in the same section that:

"The Circuit Court to which any cause shall be removable under this act shall have power to issue a writ of certiorari to said state court commanding said state court to make return of the record in any such cause removed as aforesaid, or in which any one or more of the plaintiffs or defendants have complied with the provisions of this act for the removal of the same, and en force said writ according to law."

If, as contended, after the provisions of the Judiciary Act have been complied with, the state court may nevertheless retain jurisdiction of a removable cause until it is taken away by the Supreme Court, of what avail are the provisions of the removal statute? Why should the Circuit Court be clothed with power to command the state court to make return of the record? Why, notwithstanding such refusal, is the party desiring removal permitted to enter the record in the federal court, and thus impose on that court the duty to proceed in the same manner as if the cause had been originally commenced in that forum? And why is it made a criminal offense in the clerk of the state court to refuse a copy of such record when his legal fees are tendered by the party desiring removal?

It is unthinkable that Congress would provide such an elaborate procedure if it could be of no avail without the consent of the state court, or until the Supreme Court of the United States had so directed. The right of removal is one conferred by the federal statute. It is therefore a federal question. An order of removal by the state court is unnecessary. My attention has been called to no authority which holds the contrary. The right of removal is in no wise dependent on the judgment of the state court. Donovan v. Wells, Fargo & Co., 169 Fed. 363, 94 C. C. A. 609, 22 L. R. A. (N. S.) 1251.

That right, under the statute, depends on the existence of certain facts. The petition setting up these facts must be accepted as true by the state court. If the truth of such allegations of fact is controverted,

the issue can be decided by the federal court only. There is no intimation in the statute that the federal court "shall proceed no further in the cause" if the state court refuses to order removal. On the contrary, notwithstanding such refusal, the federal court must "proceed in the same manner as if it had been originally commenced in" that court, when a record from the lower court presenting a removable cause is duly entered.

In support of its position, defendant has cited the following cases: Springer v. Howes (C. C.) 69 Fed. 849; Burlington, etc., Ry. Co. v. Dunn, 122 U. S. 513, 7 Sup. Ct. 1262, 30 L. Ed. 1159; Chesapeake & Ohio R. R. Co. v. White, 111 U. S. 134, 4 Sup. St. 353, 28 L. Ed. 378; Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962; Southern Pacific R. R. Co. v. Superior Court, 63 Cal. 607; Johnson v. Fire Ins. Co., 51 Wis. 570, 8 N. W. 297, 9 N. W. 657. Inasmuch as it is conceded that the decision of the Supreme Court on issues of jurisdiction is final, it will be unnecessary to consider the California and Wisconsin cases.

In Springer v. Howes (C. C.) 69 Fed. 849, after the state trial court had refused an order of removal, and the refusal had been sustained by the Supreme Court of North Carolina, the United States Circuit Court considered the matter, and remanded the case, stating that it saw no reason to question the correctness of the decision of the Supreme Court.

In Railway Company v. Dunn, 122 U. S. 513, 7 Sup. Ct. 1262, 30 L. Ed. 1159, after a sufficient petition on removal had been filed in the state court, an issue of fact as to citizenship was raised. On this issue the court refused to make an order transferring the cause; later there was a judgment, which was affirmed in the state Supreme Court, and taken on writ of error to the Supreme Court of the United States. There it was reversed on the ground that, if an issue of fact is made on the removal petition, that issue must be tried in the Circuit Court. It does not appear that any action had been taken in the Circuit Court of the United States.

In C. & O. R. R. Co. v. White, 111 U. S. 134, 4 Sup. Ct. 353, 28 L. Ed. 378, the appellate court of West Virginia awarded a mandamus, requiring the county court to proceed with the trial of a cause, notwithstanding the petition and bond for removal. From the judgment awarding the writ of mandamus, a writ of error was taken to the Supreme Court of the United States; a petition was also filed in the same court, praying for a writ of prohibition directed to the county court, its judge, and the plaintiff, requiring them to desist from all further proceedings until final disposition of the writ of error. It was held that the remedy was by writ of error after final judgment, and not by prohibition, or punishment for contempt.

In Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962, there was a suit between the state on one side and a citizen on the other. Notwithstanding the petition and bond, the state court proceeded with the cause, and entered judgment in favor of plaintiff. This judgment was affirmed on appeal, and from the affirmance a writ of error was taken to the Supreme Court of the United States. It was

held that a state is not a citizen within the meaning of the removal acts; consequently the state court properly retained jurisdiction.

In none of these cases did the Supreme Court consider the effect of a judgment of the Circuit Court of the United States taking jurisdiction of a cause removed from the state court. When this fact is present, it has never been held to be a nullity in a removable case. Indeed, the Supreme Court has recently held that such a judgment, though erroneous, is binding until reversed or set aside, notwithstanding the action of the state court.

In Traction Company v. Mining Co., 196 U. S. 239, 256, 25 Sup. Ct. 251, 49 L. Ed. 462, the state court refused to order removal of a condemnation suit, on the ground that the relief was provided by state statute, and therefore the issues were primarily and exclusively for the state courts. There was no issue of fact; it was purely a question of law as to whether a condemnation suit between parties having requisite diversity of citizenship was removable to the federal court. The Mining Company filed in the federal court a complete transcript, and brought suit to enjoin the Traction Company from proceeding further in the state court. In sustaining the decree awarding the injunction, the Supreme Court of the United States said:

"We hold that, as the proceeding in the county court was a suit involving a controversy between corporate citizens of different states, it was one of which the Circuit Court of the United States could have taken original cognizance, under the Judiciary Act, and it was therefore a removable case. And, being a removable case, it is to be regarded as having been removed upon the filing of the petition and accompanying bond for removal, in which event it was competent for the Circuit Court, having thus acquired jurisdiction of the subject-matter and of the parties, to enjoin the Traction Company from proceeding further in the state court."

Kern v. Huidekoper, 103 U. S. 485, 26 L. Ed. 354, and Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497, grew out of the same transaction. There was an action of replevin in the state court, followed by petition and bond for removal. The state court denied the petition, whereupon a transcript of the record was entered in the Circuit Court. In the meantime the state court rendered judgment in favor of the defendant, directing that the property in question be returned to him. He then filed a plea to the jurisdiction in the federal court, setting up the fact that a judgment had already been obtained in the state court. This plea was overruled. The federal court utterly disregarded the judgment in the state court, and decided in favor of the plaintiff. It was contended that the cause was not removable, because the subject-matter of the controversy was property in the possession of the sheriff, an officer of the state court, who was the defendant in the action, and that the federal court therefore had no power to wrest his possession from him. The court said:

"After the filing in the United States Circuit Court, on July 27, 1877, of the record of the proceedings in the state court, the latter lost all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgment were not, as some of the state courts have ruled, simply erroneous, but absolutely void."

Kern was sheriff, and Dietzsch coroner. After Kern had recovered his judgment in the state court, a writ of retorno habendo was issued,

which the plaintiffs refused to obey; the coroner then brought an action for the sheriff against plaintiff and the sureties on the replevin bond. Plaintiffs at once filed in the federal court a bill, praying for an injunction restraining the sheriff, the coroner, and the judgment creditors, whom they represented, from prosecuting any action on the replevin bond, or from taking any action to enforce any liability or right based on the judgment entered in the state court. The demurrer to this bill was overruled, and injunction granted as prayed for. From this decree there was an appeal to the Supreme Court, where the action of the Circuit Court was approved. The Supreme Court held that the federal court alone had jurisdiction after the record on removal had been filed therein, and that all subsequent proceedings in the state court were absolutely null and void.

Chesapeake & Ohio Ry. Co. v. McCabe, 213 U. S. 207, 29 Sup. Ct. 430, 53 L. Ed. 765, was an action against the Chesapeake & Ohio Railway Company and the Maysville & Big Sandy Railroad Company, brought in a Kentucky state court to recover damages for wrongful death alleged to have been caused by the negligence of the first company in operating a train over a track which had been leased to it by the second company. The negligence charged against the second company was that it permitted its tracks to be used by the first company. The Chesapeake & Ohio Railway Company filed a petition for removal, alleging a separable controversy. Removal was granted, but the order granting it was reversed by the Circuit Court of Appeals in Kentucky, whereupon the cause proceeded in the state court, and a transcript of the record was entered in the United States Circuit Court. There a motion to remand was denied, and the action dismissed. The judgment of dismissal was attempted to be pleaded in bar of the case in the state court. The state court refused to entertain the plea. Ultimately the matter was taken to the Supreme Court of the United States, where it was held that the United States Circuit Court had jurisdiction to determine for itself the removability of a cause, and could take jurisdiction, and protect such jurisdiction, even though the state court refused to make a removal order. It was further held that a final judgment rendered under such conditions by the Circuit Court could not be reviewed by the state court, even if the jurisdiction were improperly assumed, and that, until reversed, the judgment was binding on the state court, and could not be treated as a nullity.

In none of the Supreme Court cases relied on by defendant was it held improper for the Circuit Court to protect its jurisdiction by enjoining parties from proceeding in the state court. This was the rule in the Traction Company Case. In the Huidekoper Cases, the court approved the action of the Circuit Court in disregarding a prior judgment entered in the state court subsequent to removal, and also in issuing an injunction restraining parties from taking any action to enforce any liability or right based on such a judgment. In the McCabe Case, where a judgment rendered after removal in the federal court was interposed in bar of the trial of the same cause in the state court, it was held that, even if the federal court had erroneously assumed jurisdiction, its judgment was binding on the state court, and could

not be treated as a nullity. These decisions are utterly inconsistent with any theory that the state court, erroneously refusing to surrender, can retain jurisdiction of a cause otherwise removable.

The judgment setting aside the Buxton deeds is offered as the foundation of defendant's claim of title. It was rendered, not merely after petition and bond on removal had been filed in the superior court of Lassen county, but after a copy of the record had been entered in this court. This court has formally determined that it had jurisdiction, that the cause was removable, and had been properly removed. No steps have been taken to reverse that decision; consequently it is final and conclusive. The superior court lost jurisdiction, and all its proceedings in the cause after removal were not merely erroneous, but absolutely void. While this court may have no authority to review or reverse the judgment of that court, it can and will disregard it, and must refuse to give it effect.

Let a decree be entered in favor of the plaintiff as prayed for.